## MIKE BROWN *v.* STATE OF MARYLAND

[No. 45, September Term, 1978.]

*Decided July 20, 1979.*

470

The cause was argued before MURPHY, C. J., and SMITH, DIGGES, ELDRIDGE and COLE, JJ.

*Lawrence S. Greenwald,* with whom were *Barry F. Rosen* and *Gordon, Feinblatt, Rothman, Hoffberger & Hollander* on the brief, for appellant.

*Alexander L. Cummings, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General,* and *Clarence W. Sharp, Assistant Attorney General,* on the brief, for appellee.

COLE, J., delivered the opinion of the Court.

The sole question presented for decision in this case is whether the burning without a permit of an abandoned clubhouse at Laurel Raceway was "maliciously" caused or procured within the meaning of Maryland Code (1957, 1976 Repl. Vol., 1978 Supp.), Art. 27, § 7.

In the evening of March 1, 1976 the Howard County Fire Department received a report of a fire in the clubhouse at Laurel Raceway. Five fire companies responded to the scene,

but the building was already over seventy-five percent destroyed. After the fire only the steel skeleton of the clubhouse remained. The fire did not spread to adjoining properties, and no other portion of the raceway was damaged. Four days later a Howard County fire investigator determined that the fire was of an incendiary origin, and as a consequence Mike Brown was indicted by a Howard County grand jury on three counts of arson, two counts of accessory before the fact to arson, and one count of attempted arson under Article 27 of the Code. He was tried by jury in the Circuit Court for Howard County in February, 1977. From the evidence produced at his trial the following scenario emerged. As an officer of the raceway, Brown had been under pressure from the Maryland Racing Commission during the fall of 1975 to have the old clubhouse demolished and a new one constructed pursuant to a plan which would provide extra racing days if improvements were promptly completed. The physical facilities at Laurel Raceway were so badly deteriorated that the 1975 meet could not be held there. The clubhouse was no longer in use being hardly more than a "shell". All of its connecting utilities had been cut off; all glass had been removed or broken; and the building had been extensively vandalized. Anticipating the demolition of the building, the owners had allowed all insurance thereon to lapse.

Brown contacted Patricia Ann Gorman, an administrative assistant to the Laurel Harness Racing Association, and instructed her to obtain bids from demolition companies. When she informed Brown of the amounts submitted, he told her, "No way was he going to pay that kind of money to have the building torn down." Gorman continued to solicit bids but was unable to procure one for less than $14,470.00.

Brown then asked Gorman to find out whether she could arrange to have the clubhouse burned down. Gorman discovered that the license bureau in Howard County refused to issue a burning permit and that the Savage Volunteer Fire Department would not burn the building as a training exercise. After Gorman informed Brown of these developments Brown suggested that she try to determine the

consequence if they burned the building themselves. Gorman discussed the matter with the company which had previously insured the building, and after consultation with Brown, they concluded that the result would be nothing more serious than a fine for burning without a permit. It was agreed that Gorman would look for somebody to set the fire at a price of two hundred dollars. Gorman hired Don Hinkle, a part-time maintenance employee at the track, for this purpose.

On March 1, 1976 Brown related to Gorman the pressure he felt from the commission to demolish the building or risk losing the extra racing days. According to Gorman, Brown said, "[A]ll I want is the call from you stating that we've had a fire." Shortly thereafter, Gorman told Hinkle that Brown wanted the building burned right away. The clubhouse was destroyed by fire that same evening.

Brown was convicted on one count of being an accessory before the fact to arson in violation of Article 27, § 7 which provides in pertinent part that

> [a]ny person who wilfully and maliciously sets fire to or burns or causes to be burned or who aids, counsels or procures the burning of any ... building, whether the property of himself or of another, not a parcel of a dwelling house; ... shall be guilty of a felony and upon conviction thereof, be sentenced to the penitentiary for not more than twenty (20) years.

In July, 1977, he was given a suspended sentence and placed on probation for five years. The Court of Special Appeals affirmed his conviction, *Brown v. State,* 39 Md. App. 497, 388 A. 2d 130 (1978) holding that "the record contains sufficient evidence of malice from which a jury could have concluded such to have been a part of the appellant's mental state." *Id.* at 507. As a predicate to its holding, the Court of Special Appeals stated that in its opinion the definition of "malice" has eroded from one including malevolence and ill will to one of an intended burning. The court concluded that a showing of a deliberate intent to execute a burning was sufficient to prove both wilfulness and maliciousness in this case because

"malice may be presumed [inferred] from the wilfullness of the act of burning." *Id.* at 509. Following a timely petition, we granted certiorari to consider whether "malice" within the meaning of Article 27, § 7 had indeed been proven where the only reason for the burning of the clubhouse was to save demolition costs.

Before this Court Brown first contends that when the term "malice" is used in the context of the statutory crime of arson, it is not synonymous with "intent" or "wilfullness." Brown asserts that only acts which are performed with ill will toward another or with an intent to harm or injure another are "malicious." Second, Brown argues that malice is a distinct element of proof of arson which cannot be inferred from a mere showing of an intent to burn. Brown protests that the Court of Special Appeals' equation of "maliciously" with "wilfully" in Article 27, § 7 renders the term "malicious" superfluous. The State, in turn, asks us to approve both the Court of Special Appeals' interpretation of the term "malice" and its corollary ruling that malice may properly be inferred from proof of an intentional burning. We shall decline to do so and state our reasons.

Arson at common law was the malicious and wilful burning of the house or out-house of another. It was a crime against the habitation of individuals, rather than an offense against property, and was considered a grave offense demonstrating a reckless disregard for human life. To constitute the offense, four elements had to be proven. First, the building burned must have been a dwelling house or outbuilding within the curtilage. Second, the house or building burned must have been occupied by another; ownership was not the proper test at common law. Thus where the accused burned the house which he occupied with neither purpose nor effect of bringing harm to someone else's dwelling, the common law offense of arson was not committed. Third, mere scorching of the house was insufficient; there must have been some actual burning of the house. Fourth, the burning must have been willful and malicious. Clark & Marshall, *A Treatise on the Law of Crimes,* §§ 13.09-13.13 (7th ed. 1967).

Various state legislatures have enacted statutes which

have extended and broadened the definition of the crime of arson. The Maryland General Assembly, for example, has enacted five separate statutory provisions in Article 27 which widen the scope of arson beyond its common law limits; however, the legislature never defined malice in its role as an essential element of the crime of arson.[1]

We have repeatedly stated that where the legislature has chosen not to define a term used in a statute, that term should, in the first instance, be given its ordinary and natural meaning "without resorting to subtle or forced interpretations for the purpose of extending or limiting its operation." *Schweitzer v. Brewer,* 280 Md. 430, 438, 374 A. 2d 347 (1977). *See also Gietka v. County Executive,* 283 Md. 24, 387 A. 2d 291 (1978); *Mazor v. State, Dep't of Correction,* 279 Md. 355, 369 A. 2d 82 (1977); *Howell v. State,* 278 Md. 389, 364 A. 2d 797 (1976); *Booth v. Campbell,* 37 Md. 522 (1873); *Allen v. Insurance Co.,* 2 Md. 111 (1852). "Malice" has been defined as an "intention or desire to harm another . . . through doing something unlawful or otherwise unjustified." *Webster's Third New International Dictionary* 1367 (P. Gove ed. 1976). A majority of courts in other jurisdictions which have analyzed the term "malice" in an arson context have adopted similar definitions. The common thread running throughout these decisions is that a malicious act is one intended to bring harm to another person. *Heard v. State,* 81 Ala. 55, 1 So. 640 (1886); *State v. Scott,* 576 P. 2d 1383 (Ariz. App. 1978); *Matter of Appeal in Pima Cty. Juv. Act. No. J-37390-1,* 570 P. 2d 206 (Ariz. App. 1977); *People v. McCree,* 128 Cal.App.2d 196, 275 P. 2d 95 (1954); *People v. George,* 42 Cal.App.2d 568, 109 P. 2d 404 (1941); *State v. Pisano,* 107 Conn. 630, 141 A. 660 (1928); *State v. Lockwood,* 74 A. 2 (Del. 1909); *Love v. State,* 144 So. 843 (Fla. 1932); *State v. Dunn,*

---

1. Maryland Code (1957, 1976 Repl. Vol., 1978 Supp.), Article 27, § 6 expands the basic common law definition to include as a principal to the crime a person who is not actually or constructively present but who "causes . . . aids, counsels or procures" the burning of a dwelling house or other related property. Article 27, §§ 7 and 8 also include a procurement element; these sections enlarge the types of properties whose wilful and malicious burning constitutes arson, including the burning of one's own property. Article 27, § 9 prohibits the burning of any personal property with an intent to injure or defraud an insurer. Article 27, § 10 sets forth the elements of the crime of attempted arson and penalties for its commission.

199 N.W.2d 104 (Iowa 1972); *State v. Willing*, 105 N. W. 355 (Iowa 1905); *Jillson v. Commonwealth,* 461 S.W.2d 542 (Ky. 1970); *Commonwealth v. Lamothe,* 343 Mass. 417, 179 N.E.2d 245 (1961); *State v. Spino,* 61 Wash.2d 246, 377 P. 2d 868 (1963). As such, "maliciously" differs from the term "wilfully," the latter commonly interpreted as meaning "intentionally." *See Dates v. State,* 335 So.2d 222 (Ala. App. 1976); *State v. Scott, supra; Matter of Appeal in Pima Cty. Juv. Act. No. J-37390-1, supra; People v. McCree, supra; People v. George, supra; State v. Lockwood, supra; Love v. State, supra; State v. Dunn, supra; State v. Willing, supra; State v. Mutschler,* 212 N. W. 832 (N.D. 1927); *Crow v. State,* 136 Tenn. 333, 189 S. W. 687 (1916); *State v. Spino, supra; A. Curtis, supra,* § 58, at 73. To fail to draw a distinction between the meanings of "maliciously" and "wilfully" as these terms appear in Article 27, § 7 would render part of the statutory language surplusage, a construction to be avoided if possible. *See Schweitzer v. Brewer, supra; Cloverfields Imp. v. Seabreeze Prop.,* 280 Md. 382, 373 A. 2d 935 (1977); *Howell v. State, supra. Accord, State v. Mutschler, supra,* 212 N. W. at 834.

Applying these principles to the facts before us, we cannot say that Brown "maliciously" caused or procured the burning of the clubhouse. Nowhere does the record indicate that Brown had any intention to harm others or that he displayed a reckless disregard for their safety. The clubhouse had been abandoned and was unoccupied. The fire took place in an area which was isolated from any public property or private buildings owned by others.[2] All the utilities had been turned off prior to the fire, minimizing the risk of a more extensive conflagration.

No fraud could have been perpetrated because the building was uninsured. Neither is there any evidence that an intent to injure the firemen who were summoned to the scene

---

2. The fact that a fire was deliberately set in an area far away from other dwellings was the basis for a distinction in punishment at common law. Sir William Blackstone wrote that "the civil law ... punishes with death such as maliciously set fire to houses in towns and contiguous to others, but is more merciful to such as only fire a cottage or house standing by itself." 4 W. Blackstone, *Commentaries on the Laws of England* 1615 (Am.ed. Lewis 1922).

should be attributed to Brown. As our predecessors said in *Aravanis v. Eisenberg,* 237 Md. 242, 250-51, 206 A. 2d 148 (1965):

> When a fire department is called to fight a blaze, the cause of the blaze is immaterial. It may be the result of actual negligence on the part of the property owner, such as the dropping of a lighted match, or his negligence in the maintenance of his property, as in permitting a known defective condition of the wiring to remain uncorrected. In either case, if the fireman is injured by the flames or gases of the conflagration, apart from unusual factors operative after the fire has begun, he can not recover. *Fighting the fire, however caused, is his occupation. Compensation for injuries sustained in the fulfillment of his duties, absent other circumstances, is the obligation of society.*
>
> Even though the property owner might be held liable for negligence to a business visitor injured in the resulting fire, the cases are uniform in holding that, apart from failing to warn of hidden dangers and statutory violations, he is not liable to the fireman. [(emphasis supplied) (footnote omitted)].[3]

Simply stated, conspicuously absent from this case is any showing that Brown's actions fell within the definition of "malice" set forth above.

We also decline to accept the State's argument that malice should be inferred from the wilfulness of Brown's actions. All the principal Maryland cases cited by the State which permit such an inference are distinguishable because they relate to arson committed against the property of another person. *See McDowell v. State,* 231 Md. 205, 189 A. 2d 611 (1963); *Bollinger v. State,* 208 Md. 298, 117 A. 2d 913 (1955); *Hughes v. State,* 6 Md. App. 389, 251 A. 2d 373 (1969). The English

---

**3.** The continuing viability of the *Aravanis* decision has recently been affirmed. *See* Sherman v. Suburban Trust Co., 282 Md. 238, 384 A. 2d 76 (1978).

cases upon which the State relies are similarly inapposite. *See Reg. v. Faulkner,* 13 Cox 550 (1877); *Reg. v. Regan,* 4 Cox 335 (1850); *Rex v. Salmon,* 168 Eng. Rep. 665 (1802). While malice might reasonably be read into actions which are directed toward others or their property, such an inference would be unjustified in this case where the record is devoid of any evidence that Brown intended to harm or did in fact harm others as a result of having the clubhouse burned.

While we in no way intend to be understood as countenancing Brown's act, which may well be a violation of some other law, our conclusion that he was not an accessory before the fact to the crime of arson as defined in Maryland is inescapable.

> *Judgment of the Court of Special Appeals reversed and case remanded to that court with instructions to reverse the judgment of the Circuit Court for Howard County; costs to be paid by Howard County.*