772 A.2d 1240

**Reginald T. HOLBROOK**

**v.**

**STATE of Maryland.**

**No. 88, Sept. Term, 2000.**

Court of Appeals of Maryland.

June 5, 2001.

356

358

Geraldine K. Sweeney, Assistant Public Defender (Stephen E. Harris, Public Defender, on brief), Baltimore, for petitioner.

Devy Patterson Russell, Assistant Attorney General (J. Joseph Curran, Jr., Attorney General of Maryland, on brief), Baltimore for respondent.

Argued before BELL, C.J. RAKER, WILNER, CATHELL, HARRELL, BATTAGLIA, and RODOWSKY, LAWRENCE F., (retired, specially assigned) JJ.

HARRELL, Judge.

Following a non-jury trial in the Circuit Court for Wicomico County, Reginald T. Holbrook (Petitioner) was convicted of first degree arson, eight counts of reckless endangerment, and making a threat of arson. He was sentenced to: (a) 30 years imprisonment (22½ of which were suspended) for the first degree arson conviction; (b) five years for the first reckless endangerment conviction (to run consecutive to the arson sentence); (c) five years for each of the remaining seven reckless endangerment convictions (to run consecutive to the arson sentence, but concurrent to each other and the first reckless endangerment sentence); and, (d) 10 years for the threat of arson conviction (to run concurrent to the arson sentence). On direct appeal to the Court of Special Appeals, Petitioner argued that the trial court erred at sentencing in not merging the convictions for reckless endangerment with the conviction for arson. In a reported opinion, the intermediate appellate court affirmed the Circuit Court's judgments. *Holbrook v. State*, 133 Md.App. 245, 754 A.2d 1103 (2000).

We granted Petitioner's *writ of certiorari*,[1] which posed the following question:

In this reported opinion on an issue of first impression, did the Court of Special Appeals err in holding that a conviction and (consecutive) sentence for reckless endangerment did not merge into the conviction and sentence for first degree arson, where the reckless endangerment was the creation of risk of harm to persons inside a dwelling where defendant

---

1. *Holbrook v. State*, 361 Md. 231, 760 A.2d 1106 (2000).

set a fire, and the first degree arson was the setting of the fire at the dwelling.

## I.

Pursuant to Maryland Rule 8–501(g),[2] the parties agreed to adopt the statement of facts contained in the opinion of the Court of Special Appeals as the statement of undisputed facts in this Court.

There is no significant dispute about the facts in this case. In 1998, Alisha Collins leased a residence at 230 Ohio Avenue in Salisbury, Maryland. Between April and May of that year, nine people lived there: Alisha Collins, her husband, and their three-year old daughter; Alisha Collins's mother and her six-year old twins; Alisha Collins's aunt, DeKota Collins, and her three-year old daughter; and, Mr. Holbrook, who was DeKota Collins's boyfriend. Mr. Holbrook resided at the home for several months and contributed to the rent.

DeKota Collins was the representative payee for Mr. Holbrook's social security payments. On May 1, 1998, Mr. Holbrook and DeKota Collins had an argument over his money during which he made a menacing gesture toward her with a screwdriver. Alisha Collins called the police. The responding officer told Mr. Holbrook that he would have to leave and not to return to the premises. The officer stayed while Mr. Holbrook removed all of his belongings. Alisha Collins testified at trial that Mr. Holbrook was "really mad."

About an hour after leaving the premises, Mr. Holbrook returned and asked to speak to DeKota. She told him, "Reggie, I don't want you no more. I just want you to leave me alone and don't come back here no more." Mr. Hol-

---

**2.** Maryland Rule 8–501 provides, in pertinent part:

(g) *Agreed statement of facts or stipulation.* The parties may agree on a statement of undisputed facts that may be included in a record extract or, if the parties agree, as all or part of the statement of the facts in the appellant's brief.....

brook sat on the porch and cried. About one hour later, Alisha Collins and her husband left the premises with Mr. Holbrook. The three shared a cab ride, during which Mr. Holbrook repeatedly said "I'm going to get all of you."

On May 6, 1998, Alisha Collins observed Mr. Holbrook walking back and forth across the street from her house. She testified that he said "I'll burn this mother fucker up." Over the objection of defense counsel, Alisha Collins testified that a week before Mr. Holbrook left the home, she overheard an argument between him and DeKota Collins during which Mr. Holbrook said "I'll burn this mother fucker house down" and "I got people that can hurt you that live upstate."

On the evening of May 7, 1998, Mr. Holbrook came to the door of the home and asked to see DeKota Collins. Alisha Collins lied and said that she was not home. Mr. Holbrook remained outside of the house for about 45 minutes calling DeKota's name and saying that he wanted to talk to her. That night, Alisha Collins fell asleep on the living room sofa. Sometime after midnight, she awoke to the smell of smoke. She awoke her husband, who went out the back door and discovered a pillow burning on the back porch. All of the occupants safely evacuated the house.

Kevin Ward, a firefighter with the Salisbury Fire Department, testified that the flames from the burning pillow were about 6 to 12 inches high when he arrived, and that there were char marks on the threshold to the rear door and smoke in the basement.

Alisha Collins testified that she saw Mr. Holbrook across the street 10 to 15 minutes after the fire was discovered. She told the police that Mr. Holbrook started the fire. Mr. Holbrook was questioned by the police and by the fire marshal. He was subsequently arrested and charged with arson, reckless endangerment, and threats of arson.

*Holbrook,* 133 Md.App. at 250–251, 754 A.2d at 1105–1106.

On 29 April 1999, Petitioner was tried in a bench trial in the Circuit Court for Wicomico County. The court found Petition-

er guilty of one count of first degree arson, eight counts of reckless endangerment,[3] and one count of making a threat of arson.[4] At the 28 June 1999 sentencing proceeding, defense counsel requested that the trial judge merge the reckless endangerment convictions into the first degree arson conviction; the court declined. Petitioner received a 30 year sentence for the arson conviction, with all but 22½ years suspended. For the first reckless endangerment conviction, Petitioner was sentenced to five years, to run consecutive to the arson sentence. For each of the remaining seven convictions of reckless endangerment, Petitioner received five years, to run consecutive to the arson sentence, but concurrent to the first reckless endangerment sentence, as well as to each other.

On direct appeal to the Court of Special Appeals, Petitioner presented two questions: whether the trial judge erred in refusing defense counsel's request to merge the reckless endangerment convictions into the first degree arson conviction; and, whether the trial judge erred in allowing the State to amend the criminal information immediately prior to trial, specifically, the date of the alleged arson threat, and then allowing testimony of threats made at times other than that originally charged. In a reported opinion filed on 1 July 2000, the intermediate appellate court, *inter alia*, affirmed the trial court's refusal to merge the reckless endangerment convictions (concluding so after analysis under the required evidence test and the rule of lenity) with the arson conviction. *Holbrook*, 133 Md.App. at 258, 754 A.2d at 1110.

We granted *certiorari* on 12 October 2000. *Holbrook v. State*, 361 Md. 231, 760 A.2d 1106 (2000). Petitioner contends that the Court of Special Appeals erred in holding that a conviction and consecutive sentence for reckless endangerment did not merge into the conviction and sentence for first degree arson, when the reckless endangerment was the cre-

---

**3.** Petitioner was found guilty of one count of reckless endangerment for each of the eight persons present in the house at the time of the fire.

**4.** The sentence for the conviction of making a threat of arson, to run concurrent to the arson sentence, is not at issue before this Court.

ation of risk of harm to persons inside a dwelling where Petitioner set a fire on a porch, and the first degree arson was the setting of the fire at the dwelling.

## II.

Petitioner argues that, under either the required evidence test or the rule of lenity, or for reasons of "fundamental fairness," the reckless endangerment convictions and sentences should have merged into the arson conviction and sentence. Concluding that arson and reckless endangerment are separate and distinct crimes, we disagree with Petitioner's assertion. For reasons we shall explain, we hold that, under the circumstances of this case, the Court of Special Appeals did not err when it affirmed the Circuit Court's refusal to merge reckless endangerment with arson.

## III.

We reiterate that "the cardinal rule of statutory interpretation is to ascertain and effectuate the intention of the legislature." *In re Anthony R.*, 362 Md. 51, 57, 763 A.2d 136, 139 (2000) (quoting *Oaks v. Connors*, 339 Md. 24, 35, 660 A.2d 423, 429 (1995)); *Giant Food, Inc. v. Department of Labor, Licensing, and Regulation*, 356 Md. 180, 188, 738 A.2d 856, 860 (1999) (quoting *Oaks*, 339 Md. at 35, 660 A.2d at 429). When striving to determine the legislative intent of any statute, we first examine the plain language of the statute. *See In re Anthony R.*, 362 Md. at 57, 763 A.2d at 139.

Ordinarily, we afford the words of the statute their natural and usual meaning in the context of the Legislature's purpose and objective in enacting the statute. *See Roberts v. State*, 361 Md. 346, 360, 761 A.2d 885, 893 (2000) (citing *Marriott Employees Fed. Credit Union v. Motor Vehicle Admin.*, 346 Md. 437, 445, 697 A.2d 455, 458 (1997); *Hunt v. Montgomery County*, 248 Md. 403, 414, 237 A.2d 35, 41 (1968)). Moreover, we should avoid "resorting to subtle or forced interpretations for the purpose of extending or limiting [the statute's] operation." *Brown v. State*, 285 Md. 469, 474-5,

403 A.2d 788, 791 (1979) (quoting *Schweitzer v. Brewer,* 280 Md. 430, 438, 374 A.2d 347 (1977)) (citing *Gietka v. County Executive,* 283 Md. 24, 387 A.2d 291 (1978); *Mazor v. State, Dep't of Correction,* 279 Md. 355, 369 A.2d 82 (1977); *Howell v. State,* 278 Md. 389, 364 A.2d 797 (1976); *Booth v. Campbell,* 37 Md. 522 (1873); *Allen v. Insurance Co.,* 2 Md. 111 (1852)).

## A. Common Law and Legislative History

### 1. Reckless Endangerment

■ Reckless endangerment is purely a statutory crime. Modeled after § 211.2 of the Model Penal Code ("Recklessly Endangering Another Person") and first enacted in Maryland by chapter 469 of the Acts of 1989, reckless endangerment was codified originally as Md.Code (1957, 1992 Repl.Vol.), Art. 27, § 120 under the subtitle DESTROYING, INJURING, ETC., PROPERTY MALICIOUSLY. Effective 1 October 1996, the Legislature repealed § 120 by Acts 1996, chapter 632, enacting in its stead Md.Code (1957, 1996 Repl.Vol.), Art. 27, § 12A–2 under the subtitle of ASSAULT. This statute presently provides, in pertinent part:

(a) *Creation of substantial risk of death or serious physical injury; penalties.*

—(1) Any person who recklessly engages in conduct that creates a substantial risk of death or serious physical injury to another person is guilty of the misdemeanor of reckless endangerment and on conviction is subject to a fine of not more than $5,000 or imprisonment for not more than 5 years or both.

\* \* \* \*

(c) *More than one person endangered.*—If more than one person is endangered by the conduct of the defendant, a separate charge may be brought for each person endangered.[5]

---

5. Petitioner does not challenge his multiple convictions under § 12A–2(c).

Md.Code (1957, 1996 Repl.Vol., 2000 Suppl.), Art. 27, § 12A–2(a)(1).[6]

In two recent cases, we have discussed the legislative underpinnings of the reckless endangerment statute, as well as the elements of the crime. In *State v. Pagotto*, 361 Md. 528, 762 A.2d 97 (2000), we noted that

> [t]his statute is aimed at deterring the commission of potentially harmful conduct before an injury or death occurs. *See Minor*, 326 Md. at 442, 605 A.2d at 141. The statute was enacted "to punish, as criminal, reckless conduct which created a substantial risk of death or serious physical injury to another person. It is the reckless conduct and not the harm caused by the conduct, if any, which the statute was intended to criminalize." *Minor*, 326 Md. at 441, 605 A.2d at 141. Thus, the focus is on the conduct of the accused.

*Pagotto*, 361 Md. at 549, 762 A.2d at 108;[7] *see also State v. Albrecht*, 336 Md. 475, 500–01, 649 A.2d 336, 348 (1994) ("Maryland's reckless endangerment statute is aimed at deterring the commission of potentially harmful conduct before an injury or death occurs. As a consequence, a defendant may be guilty of reckless endangerment even where he has caused no injury."). In *Jones v. State*, 357 Md. 408, 745 A.2d 396 (2000), we concluded that

> [t]he elements of a prima facie case of reckless endangerment are: 1) that the defendant engaged in conduct that created a substantial risk of death or serious physical injury to another; 2) that a reasonable person would not have engaged in that conduct; and 3) that the defendant acted

---

**6.** The pertinent language of the 2000 Supplement to Maryland Code (1957, 1996 Repl.Vol.), Art. 27, § 12A–2 is the same language under which Petitioner was convicted in 1998. Article 27, § 12A–2(a)(1) contains the same language as in the now repealed Art. 27, § 120.

**7.** At the time of the incident in question in *State v. Pagotto*, 361 Md. 528, 762 A.2d 97 (2000), the reckless endangerment statute was codified as ·Maryland Code (1957, 1992 Repl.Vol.) Article 27, § 120(a). The legislative intent discussed in *Pagotto* still is applicable to the present discussion, however, in light of note 6, *supra*. The pertinent language of the repealed § 120 and the enacted § 12A–2 are the same.

recklessly. *See Albrecht,* 336 Md. at 501, 649 A.2d at 348–49.

*Jones,* 357 Md. at 427, 745 A.2d at 406. Noting that most Maryland cases addressing these elements discuss the requisite mental state to sustain a reckless endangerment conviction, both *Pagotto* and *Jones* cite to *Minor,* where the Court adopted and applied an objective *mens rea:*

> [G]uilt under the statute does not depend upon whether the accused intended that his reckless conduct create a substantial risk of death or serious injury to another. The test is whether the appellant's misconduct, viewed objectively, was so reckless as to constitute a gross departure from the standard of conduct that a law-abiding person would observe, and thereby create the substantial risk that the statute was designed to punish.

*Pagotto,* 361 Md. at 549, 762 A.2d at 108 (quoting *Minor,* 326 Md. at 443, 605 A.2d at 141); *Jones,* 357 Md. at 427, 745 A.2d at 406 (quoting *Minor,* 326 Md. at 443, 605 A.2d at 141).

### 2. Arson

At common law, arson was defined as the malicious burning of the dwelling of another. *See Brown,* 285 Md. at 473, 403 A.2d at 791; *Gibson v. State,* 54 Md. 447, 450 (1880). Moreover, "at common law, arson [was] an offense against the security of habitation or occupancy, rather than against ownership or property." *Richmond v. State,* 326 Md. 257, 264, 604 A.2d 483, 487 (1992); *see also Brown,* 285 Md. at 473, 403 A.2d at 791.

To be convicted of common law arson, the State had to establish four elements: (1) that the building burned was a dwelling house or outbuilding within the curtilage; (2) that the building burned was occupied by another; (3) that the building was actually burned, as mere scorching would not suffice; and, (4) that the accused's *mens rea* was willful and malicious.[8] *See*

---

8. The Legislature did not define the terms "wilfully" and "maliciously" until 1992. *See* Part IV.A, *infra.*

*Brown,* 285 Md. at 473, 403 A.2d at 791 (citing CLARK & MARSHALL, A TREATISE ON THE LAW OF CRIMES, §§ 13.09–13.13 (7th ed.1967)).

We most recently addressed the early legislative history of arson in *Richmond:*

> By Ch. 138 of the Acts of 1809 the Legislature prescribed punishments for the various common law crimes. Section 5 of that Act dealt with the crime of arson, which at common law is the willful and malicious burning of the dwelling house of another, either by night or day. R. PERKINS AND R. BOYCE, CRIMINAL LAW, 273–74 (3d ed.1982); 3 C.TORCIA, WHARTON'S CRIMINAL LAW, § 345 (14th ed. 1980).... In 1904, the General Assembly slightly expanded upon the common law definition of arson by making illegal the burning of one's own dwelling house if the intent in burning it was to injure or defraud. Ch. 267, § 6 of the Acts of 1904.
>
> The first substantive attempt to codify the elements of the crime of arson occurred in 1929. Ch. 255, § 6 of the Acts of 1929. The wording of the statute in force today, Art. 27, § 6 [*see infra* ], remains unchanged since that time. While retaining the common law definition of arson in Art. 27, § 6, other sections of Art. 27 have been added by the Legislature to cover burning of buildings not specified in § 6, burning of personal property of another, burning goods with the intent to defraud an insurer, attempted arson, and other criminal burnings. Art. 27, §§ 7–10....

*Richmond,* 326 Md. at 263–64, 604 A.2d at 486 (internal citations and footnotes omitted).

The present day arson statute, under which Petitioner was convicted, defines arson as "willfully and maliciously set[ting] fire to or burn[ing] a dwelling or occupied structure, whether the property of the person or another." Md.Code (1957, 1996 Repl. Vol.), Art. 27, § 6(a). "Dwelling," the term applicable in this case, is defined as "a structure, regardless of whether an individual is actually present, any portion of which has been adapted for overnight accommodation of individuals." Md. Code (1957, 1996 Repl.Vol., 2000 Suppl.), Art. 27, § 5(b).

Additionally, "maliciously" is defined as "an act done with intent to harm a person or property," Md.Code (1957, 1996 Repl.Vol.), Art. 27, § 5(c), while "willfully" is defined as "an ,act which is done intentionally, knowingly, and purposefully." Md.Code (1957, 1996 Repl.Vol.), Art. 27, § 5(f).

## IV.

### A. Required Evidence Test

Under the Double Jeopardy Clause of the Fifth Amendment of the United States Constitution, the State can neither hold multiple trials nor punish a defendant multiple times for the same offense. *See Missouri v. Hunter*, 459 U.S. 359, 365–69, 103 S.Ct. 673, 677–79, 74 L.Ed.2d 535 (1983); *Whalen v. United States*, 445 U.S. 684, 688–89, 100 S.Ct. 1432, 1436, 63 L.Ed.2d 715 (1980); *Brown v. Ohio*, 432 U.S. 161, 165, 97 S.Ct. 2221, 2225, 53 L.Ed.2d 187 (1977); *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 2077, 23 L.Ed.2d 656 (1969), *overruled on other grounds by Alabama v. Smith*, 490 U.S. 794, 109 S.Ct. 2201, 104 L.Ed.2d 865 (1989). Where a legislature, however, specifically authorizes cumulative punishment under two statutes irrespective of whether they prohibit the same conduct, such punishment may be imposed under the statutes in a single trial. *Jones*, 357 Md. at 156, 742 A.2d at 501 (citing *Missouri*, 459 U.S. at 365, 103 S.Ct. at 678, 74 L.Ed.2d at 542 ("[T]he Double Jeopardy Clause does no more than prevent the sentencing court from proscribing greater punishment than the legislature intended.")).

In the present case, Petitioner received multiple punishments for the same conduct under two statutes in a single trial. As the Court of Special Appeals noted correctly, under Maryland common law, the required evidence test [9] is

---

**9.** While the required evidence test is commonly referred to as the *"Blockburger"* test, *see Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), it has also been called the "same evidence" test, *see Dixon v. State*, 364 Md. 209, 236–37, 772 A.2d 283, 299 (2001), the "elements" test, *see Hagans v. State*, 316 Md. 429, 449–50, 559 A.2d 792, 801–02 (1989), and the "same elements" test, *see*

■■■■■■■

the appropriate "test for determining whether the different statutory or common law offenses, growing out of the same transaction, are to merge and be treated as the same offense for double jeopardy purposes." *Holbrook*, 133 Md.App. at 252, 754 A.2d at 1106 (citing *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932); *Williams v. State*, 323 Md. 312, 593 A.2d 671 (1991); *State v. Ferrell*, 313 Md. 291, 545 A.2d 653 (1988); *Simpson v. State*, 121 Md.App. 263, 708 A.2d 1126 (1998)); *see also Dixon v. State*, 364 Md. 209, 336–337, 772 A.2d 283, 299 (2001); *Jones*, 357 Md. at 156–57, 742 A.2d at 501; *McGrath v. State*, 356 Md. 20, 23, 736 A.2d 1067, 1069 (1999). The required evidence test

is that which is minimally necessary to secure a conviction for each ... offense. If each offense requires proof of a fact that the other does not, or in other words, if each offense contains an element which the other does not, the offenses are not the same for double jeopardy [and merger] purposes, even though arising from the same conduct or episode. But, where only one offense requires proof of an additional fact, so that all elements of one offense are present in the other, the offenses are deemed to be the same for double jeopardy [and merger] purposes.

*Williams*, 323 Md. at 317–18, 593 A.2d at 673 (quoting *Thomas v. State*, 277 Md. 257, 267, 353 A.2d 240, 246–47 (1976)); *see also Dixon*, at 237–38, 772 A.2d at 299–300. As a matter of course, merger occurs when two offenses are based on the same act or acts and are deemed to be the same under the required evidence test; however, "the Legislature may punish certain conduct more severely if particular aggravating circumstances are present ... by imposing punishment under two statutory offenses." *See Williams*, 323 Md. at 317–18, 593 A.2d at 673 (quoting *Frazier v. State*, 318 Md. 597, 614–15, 569 A.2d 684, 693 (1990)).

■■■■■ In Petitioner's view, "every first degree arson necessarily involve[s] a reckless endangerment," but not vice versa.

---

*United States v. Dixon*, 509 U.S. 688, 696, 113 S.Ct. 2849, 2856, 125 L.Ed.2d 556, 568 (1993).

This assertion, however, is anomalous in light of the language of the statutes. Instead, we agree with the State's and the Court of Special Appeal's positions that arson and reckless endangerment do not merge under the required evidence test because each offense has an element not present in the other.

As discussed *supra*, the offense of arson requires a defendant to act "willfully and maliciously," while the reckless endangerment offense requires proof that the defendant acted "so reckless[ly] as to constitute a gross departure from the standard of conduct that a law-abiding person would observe." Petitioner argues that these *mens reae* are one and the same, for we concluded in *Richmond* that "setting a fire with reckless and wanton disregard for the consequences satisfies the wilful and malicious requirement of Art. 27, § 6." *Richmond*, 326 Md. at 268, 604 A.2d at 489. While this reasoning may have been true in 1992 when *Richmond* was filed, it is not so today. With Section 3, chapter 228 of the Acts of 1993, the Legislature repealed Art. 27, § 6, and enacted a new section in lieu of it. Moreover, Section 5, ch. 28 of the Acts of 1993 provided that § 6 would take effect on 1 October 1993. Section 5 of Art. 27, which provides the definitions for the terms used within the arson statute, defines "maliciously" as "an act done with intent to harm a person or property," and "willfully" as "an act which is done intentionally, knowingly, and purposefully." Examining the plain language used to define "maliciously" and "wilfully," we conclude that the Legislature intended for arson to be a specific intent crime.

Conversely, the Legislature clearly intended for reckless endangerment to be a general intent crime, one whose *mens rea* requirement is the conscious disregard of the risks and indifference to the consequences to *other persons*. *See Albrecht v. State*, 105 Md.App. 45, 58, 658 A.2d 1122, 1128 (1995) (emphasis added) (concluding that "the crime of Reckless Endangerment is quintessentially a crime against persons" and holding that "the unit of prosecution for the crime of Reckless Endangerment is each person who is recklessly exposed to the substantial risk of death or serious physical

injury"), *rev'd on other grounds, Albrecht,* 336 Md. 475, 649 A.2d 336; *see also Pagotto,* 361 Md. at 549, 762 A.2d at 108 (noting that the test to whether a defendant possessed the requisite *mens rea* for reckless endangerment was not whether he *intended* to create a substantial risk of death or serious bodily harm, but whether he acted in reckless disregard of that risk (citing *Minor,* 326 Md. at 443, 605 A.2d at 141)); *Jones,* 357 Md. at 425, 745 A.2d at 406 (same (citing *Minor,* 326 Md. at 443, 605 A.2d at 141)).

We distinguish further the elements of these offenses, for, in contrast with reckless endangerment, arson clearly is defined as a crime against *habitation. See Albrecht,* 105 Md. App. at 60, 658 A.2d at 1124 ("Arson, like burglary, is generally conceptualized as a crime against habitation." (citing *Smith v. State,* 31 Md.App. 106, 355 A.2d 527 (1976)). To reiterate, Art. 27, § 6 provides that "[a] person may not wilfully and maliciously set fire to or burn a dwelling or occupied structure, whether the property of the person or another." In the present case, the record reflects that, the day before the incident, Petitioner threatened to "burn this mother fucker up" and to "burn this mother fucker house down." Applying the statute to this evidence, the Circuit Court convicted Petitioner of wilfully and maliciously setting fire to or burning the Collinses' dwelling. Because dwelling "means a structure, *regardless or whether an individual is actually present,* any portion of which has been adapted for overnight accommodation of individuals" (emphasis added), we conclude that, in keeping with its common law roots, first degree arson is a crime against habitation, not persons or property. In contrast, reckless endangerment, in keeping with its statutory construction, is a crime against persons, not habitation or property. This is indicative, though not dispositive, of a legislative intent that the crimes may be punished separately. This bears on our later analysis of the rule of lenity with greater weight.

We therefore hold that, contrary to Petitioner's assertion, the general intent of "reckless and wanton disregard for the consequences" applied in *Richmond* can no longer be substi-

tuted for the specific intent required to establish the *mens rea* element of arson. We reject Petitioner's argument that, under the required evidence test, the same evidence necessary to convict on the arson offense would always be sufficient to establish the reckless endangerment offense. Accordingly, Petitioner was not convicted twice for the same offense in violation of the Double Jeopardy Clause of the United States Constitution.

### B. The Rule of Lenity

When, as in the present case, two offenses do not merge under the required evidence test, we nonetheless may consider, as a principle of statutory construction, the rule of lenity, which "provides that doubt or ambiguity as to whether the legislature intended that there be multiple punishments for the same act or transaction will be resolved against turning a single transaction into multiple offenses." *Williams,* 323 Md. at 321, 593 A.2d at 675 (quoting *White v.. State,* 318 Md. 740, 744, 569 A.2d 1271, 1273 (1990) (internal quotation marks omitted) (quoting *Simpson v. United States,* 435 U.S. 6, 15, 98 S.Ct. 909, 914, 55 L.Ed.2d 70, 78 (1978) (quoting *Bell v. United States,* 349 U.S. 81, 84, 75 S.Ct. 620, 622, 99 L.Ed. 905, 910–11 (1955)))) (citing *Monoker v. State,* 321 Md. 214, 223, 582 A.2d 525, 529 (1990) (indicating that the rule of lenity applies where both offenses are statutory in nature or where one offense is statutory and the other is a derivative of common law)). The policy behind the rule of lenity is to prohibit courts from " 'interpret[ing] a . . . criminal statute so as to increase the penalty that it places on an individual when such an interpretation can be based on no more than a guess as to what [the legislature] intended.' " *Monoker,* 321 Md. at 222, 582 A.2d at 529 (quoting *White,* 318 Md. at 744, 569 A.2d at 1273 (quoting *Simpson,* 435 U.S. at 15, 98 S.Ct. at 914, 55 L.Ed.2d at 78 (quoting *Ladner v. United States,* 358 U.S. 169, 178, 79 S.Ct. 209, 214, 3 L.Ed.2d 199 (1958)))).

As we noted *supra,* the Comment to Maryland Code (1957, 1996 Repl.Vol.), Art. 27, § 12A–2 indicates that the offense of reckless endangerment was repealed under subtitle

DESTROYING, INJURING, ETC., PROPERTY MALICIOUSLY and re-enacted under subtitle ASSAULT. We believe that the Legislature moved the offense of reckless endangerment to its current subtitle in an effort to avoid the very guesswork that Petitioner encourages us to engage in today: whether reckless endangerment could be a crime against property or habitation as well as against persons. We note that, like attempt to commit a crime, reckless endangerment is an inchoate crime, for it "is intended to deal with the situation in which a victim is put at substantial risk of death or serious bodily harm but may, through a stroke of good fortune, be spared the consummated harm itself." *Albrecht,* 105 Md.App. at 58, 658 A.2d at 1128. In this case, Petitioner was convicted of recklessly endangering the Collins family by setting fire to a pillow on their porch even though, through a stroke of good fortune, he caused no injury to them. But what if Petitioner had intended to harm the Collinses, and he in fact did cause such harm? What if his crime was no longer inchoate, but complete? It is our view that, even if Petitioner's intent was not general, but specific as to harming the Collins family, and even if the act of burning the pillow had caused an injury to one or more of the Collinses, the completion of the *mens rea* and the *actus reus* would not have ripened into the offense of arson, but rather into the offense of battery, or worse. It, however, would not have ripened under the rule of lenity into the offense of arson.

We believe that there is clear legislative intent that persons convicted of arson also may ~~also~~ be convicted of reckless endangerment. It is not logical to assume that the Legislature intended that reckless endangerment would merge for purposes of sentencing with arson. Rather, the General Assembly intended arson and reckless endangerment to be separate offenses subject to multiple punishments. Because there is no doubt or ambiguity as to whether the Legislature intended that there be multiple punishments for Petitioner's act, the punishments are permitted and the statutory offenses do not merge for sentencing purposes.

### C. *"Fundamental Fairness"*

In his brief, Petitioner advances a third issue: whether the reckless endangerment convictions should merge with the arson conviction as a matter of "fundamental fairness." This argument was neither included in Petitioner's petition for *writ of certiorari* nor argued before the intermediate appellate court. Maryland Rule 8–131(b), governing our scope of review, states:

> (b) **In Court of Appeals—Additional limitations.** (1) Prior appellate decision. Unless otherwise provided by the order granting the writ of certiorari, in reviewing a decision rendered by the Court of Special Appeals or by a circuit court acting in an appellate capacity, the Court of Appeals ordinarily will consider only an issue that has been raised in the petition for certiorari or any cross-petition and that has been preserved for review by the Court of Appeals.

In *Jones v. State,* 357 Md. 408, 745 A.2d 396 (2000), we reiterated this Rule, stating simply that "this Court will only consider matters on appeal raised in a petition for *writ of certiorari* that we have granted." *Jones,* 357 Md. at 416, 745 A.2d at 401 (citing *Walston v. Sun Cab Co.,* 267 Md. 559, 568, 298 A.2d 391, 397 (1973)). In light of Petitioner's failure to preserve this argument for our review as required by Maryland Rule 8–131(b)(1), we decline to address it.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. COSTS TO BE PAID BY PETITIONER.**