887 A.2d 682

**William W. KELLY**

v.

**CONSOLIDATED DELIVERY CO., et al.**

**No. 2588, Sept. Term, 2004.**

Court of Special Appeals of Maryland.

Dec. 6, 2005.

Peter A. Prevas, Baltimore, for appellant.

James A. Haynes, Towson, for appellee.

Panel HOLLANDER, EYLER, DEBORAH S., WOODWARD, JJ.

EYLER, DEBORAH S., J.

William W. Kelly, the appellant, challenges a judgment by the Circuit Court for Baltimore County affirming a decision by the Workers' Compensation Commission ("Commission") denying him benefits for permanent partial disability to his right shoulder. His employer, Consolidated Delivery Co. ("Consolidated"), and its insurer, the Injured Workers' Insurance Fund ("IWIF"), were the opposing parties before the Commission and the circuit court and are the appellees in this Court.

Kelly poses one question on review: "Is [he] entitled to pursue his claim for permanent partial disability benefits?" For the following reasons, we answer that question "Yes." Therefore, we shall reverse the judgment of the circuit court

and remand the case with instructions to reverse the decision of the Commission and remand to the Commission for proceedings consistent with this opinion.

## FACTS AND PROCEEDINGS

Kelly was employed by Consolidated as a delivery truck driver. On March 29, 2002, while in the course of his employment, he fell and sustained an accidental injury to his right shoulder.

On April 10, 2002, Kelly filed a claim with the Commission. Consolidated and IWIF did not contest it and began paying temporary total disability benefits on April 15, 2002. On May 8, 2002, the Commission passed an order awarding Kelly temporary total disability benefits.

On July 29, 2002, Kelly underwent surgery on his right shoulder. He continued to receive temporary total disability benefits until February 5, 2003.

On February 4, 2003, IWIF discovered that Kelly had started working for another employer on July 8, 2002, and had failed to report that employment to IWIF or to the Commission, as required.

On February 13, 2003, IWIF filed an application for statement of charges against Kelly in the District Court of Maryland for Baltimore County. Kelly was charged with one count of theft over $500, under Md.Code (2002), section 7–104 of the Criminal Law Article ("CL"), and one count of making a false claim under Md.Code (1991, 1999 Repl.Vol.), section 9–1106(a) of the Labor and Employment Article ("LE"). That entire statute states:

(a) *Prohibited act.* —— A person may not knowingly affect or knowingly attempt to affect the payment of compensation, fees, or expenses under [the Workers' Compensation] title by means of a fraudulent representation.

(b) *Penalties.* —— A person who violates this section, on conviction:

(1)is subject to the penalties under Article 27, § 342 of the Code; and

(2) may not receive compensation, fees, or expenses under [the Workers' Compensation] title.

Article 27, section 342 is the predecessor theft statute to CL section 7–104.

On May 20, 2003, Kelly appeared for trial and proceeded on a not guilty agreed statement of facts. The prosecutor read into the record the following statement of facts (which we have divided into paragraphs):

[B]etween the dates of July 8th, 2002 through February 5th, 2003, at IWIF ..., [Kelly] received temporary total disability benefits, [to] which he was not entitled. The amount he was not entitled to collect was $8,432. On March 29th, 2002, [Kelly] sustained a work-related injury while he was employed as a delivery driver.... As a result ... a claim was filed with [IWIF] for injuries sustained to his right shoulder. All appropriate medical and indemnity benefits were provided by IWIF. [Kelly's] weekly temporary total benefit was $272. He received this benefit due to the claim that he was physically unable to work.

[Kelly] received temporary total disability from March 29th, 2002 through February 5th, 2002[sic] for a total of 314 days, and $12,201.14. The checks that IWIF sends for temporary total have this written on the upper portion: ["]Important notice, it is unlawful to knowingly obtain benefits to which you are not entitled. If you return to work or your doctor releases you to return from work you are no longer eligible for temporary total compensation.["] On the claim form completed by [Kelly] the [Commission] provided a warning which states, ["]Note: Failure to disclose information or getting false information, including information regarding any work-related activity or return to work either before or after an award of benefits may subject you to fines, imprisonment, or both, and disqualify you from receiving benefits.["] The form also contains the following: ["]I hereby make claim for compensation for an injury resulting

in my disability due to an accident arising out of and in the course of my employment, and in support of it make the foregoing statements of fact, I hereby certify that the information I have given is accurate and that I have read the information on the form.["]

[Kelly] did sign the claim form and have an attorney represent him. On February 4, 2003, [Kelly's] work income history was received and revealed employment. The employer ... was contacted and stated that [Kelly] was hired on July 8th of 2002, and was a current employee.... Verification of [Kelly's] employment was obtained thereafter on October 24th, 2002.

IWIF received a disability slip citing [that Kelly] would be unable to work from September 20th, 2002 to November 6th, 2002. Additional medical records were received by IWIF dated September 3rd, 2002, November 18th, 2002, November 27th, [2002,] and January 6th, 2003 that cited the patient is still unable to work. On January 16th, 2003, vocational rehabilitation services were initiated for [Kelly] since [his] treating doctor stated that in his January 6th, 2003 medical evaluation [that Kelly] would be unable to return to his previous employment as a delivery driver.

Thereafter, on January 30th, 2003, Mr. Kelly met with the vocational rehabilitation counselor at his attorney's office. At that time [Kelly] stated that he would like to return to work as a light vending driver, newspaper delivery driver, or as a shuttle and limousine driver. He did not indicate that he was already employed. IWIF had evidence in the form of witness payroll records, disability slips, claim forms, sample explanation of benefits and cancelled checks. By claiming inability to work and accepting the temporary total disabilities when he was actually working, it is believed by IWIF that [Kelly] is in violation of the appropriate Maryland statutes, and if called to testify [an IWIF representative], who is present in court today, would state that [Kelly] did not have permission to take this money under the circumstances of this matter....

The district court judge found Kelly guilty of theft over $500, and sentenced him to one year and one day imprisonment, all suspended in favor of probation; and ordered him to pay restitution totaling $8,432 (the amount of temporary total disability benefits that IWIF overpaid), within 18 months, in increments of at least $400 per month. The State *nol prossed* the LE section 9–1106(a) charge.

In the meantime, Kelly requested a hearing before the Commission on the nature and extent of the permanent partial disability to his right shoulder from the accident. The hearing took place on November 25, 2003. At that time, Consolidated and IWIF argued that, under LE section 9–1106(b), Kelly had forfeited his right to receive any workers' compensation benefits. Kelly argued, to the contrary, that that statute did not preclude him from receiving benefits; he conceded, however, that, under LE section 9–310.1, any award he would receive would be offset by the temporary total disability benefits he wrongfully had obtained. That statute, entitled "Benefits wrongfully obtained; reimbursement; interest[,]" provides:

(a) *Reimbursement.* —— In any administrative action before the Commission, if it is established by a preponderance of the evidence that a person has knowingly obtained benefits under [the Workers' Compensation] title to which the person is not entitled, the Commission shall order the person to reimburse the insurer, self-insured, employer, the [IWIF], the Uninsured Employers' Fund, or the Subsequent Injury Fund for the amount of all benefits that the person knowingly obtained and to which the person is not entitled.

(b) *Interest.* —— An order of reimbursement required under subsection (a) of this section shall include interest on the amount ordered to be reimbursed at a rate of 1.5% per month from the date the Commission notifies the person of the amount to be reimbursed.

A hearing was held on November 25, 2003. Although Kelly took the witness stand, he did not testify because his lawyer and counsel for IWIF essentially made legal arguments to the Commissioner. After explaining the history of the criminal

case, Kelly's lawyer argued that LE section 9–1106(b) was not applicable, because Kelly was not convicted of violating LE section 9–1106(a). Rather, the LE section 9–1106(a) charge was *nol prossed.* He also conceded that, instead, Kelly should be subject to reimbursement, under LE section 9–310.1.

The lawyer for IWIF explained to the Commissioner that Kelly had been working for a different employer, not Consolidated, from July 8, 2002, until February 5, 2003, when that situation was exposed by IWIF; and that during that time, he presented disability slips to IWIF stating that he was unable to work and he met with the rehabilitation counselor and discussed how he wanted to go back to work, without telling her that he had been working (by then) for seven months. IWIF's lawyer argued that the case was "egregious" and that what Kelly did was not an oversight, or an accident.

The Commissioner reserved on the issue of nature and extent and decided to hold the case *sub curia* to decide "whether 9–1106 applies or whether another section, 9–310, would be more applicable...."

On December 16, 2003, the Commission issued an order stating that, under LE section 9–1106(b), Kelly was precluded from receiving any workers' compensation benefits.

Kelly filed an action for judicial review in the Circuit Court for Baltimore County. Consolidated and IWIF participated in the action. The parties filed cross-motions for summary judgment on the issue decided by the Commission. The court heard arguments and granted Consolidated and IWIF's motion, thus upholding the Commission's decision.

Kelly noted this timely appeal.

## DISCUSSION

Kelly contends the circuit court erred in granting Consolidated and IWIF's motion for summary judgment. He argues that he is entitled to pursue his claim for permanent partial disability benefits before the Commission because the penalty provision of LE section 9–1106 only applies upon conviction

for violation of that statute. He concludes that, because he was not convicted under that statute, the only penalty applicable to him is that under LE section 9–310.1, requiring him to reimburse IWIF for the amount of money that he wrongfully obtained.

Consolidated and IWIF respond that the circuit court correctly granted their motion for summary judgment. They argue that the district court applied the only penalty within its jurisdiction based upon Kelly's theft conviction, and that the district court lacks the power, generally, to impose the benefits preclusion penalty set forth in LE section 9–1106(b)(2). Only the Commission is vested with the authority to enforce that penalty. They further argue that, once the district court found that Kelly had committed theft, the Commission was authorized to impose the penalty in LE section 9–1106(b)(2).

We review a circuit court's grant of summary judgment *de novo*. *Johnson v. Mayor & City Council of Balt. City*, 387 Md. 1, 874 A.2d 439 (2005). Further, issues of statutory interpretation are legal questions, and therefore also are subject to review *de novo*. *Id.* In this case, the parties agree that there is no dispute of material fact. The sole issue is whether, on the undisputed facts, the Commission has the authority to preclude Kelly from recovering any workers' compensation benefits, under LE section 9–1106(b)(2). The outcome of that issue depends upon our interpretation of LE section 9–1106.

> The rules of statutory interpretation are well established: It has long been settled by this Court that "the cardinal rule of statutory interpretation is to ascertain and effectuate the intention of the legislature." *Holbrook v. State*, 364 Md. 354, 364, 772 A.2d 1240 (2001) (quoting *In re Anthony R.*, 362 Md. 51, 57, 763 A.2d 136 (2000) (internal citation omitted)). First and foremost, a court should thoroughly examine the plain language of the statute when attempting to ascertain the legislature's intentions. *Holbrook, supra,* 364 Md. at 364, 772 A.2d 1240; *In re Anthony R., supra,* 362 Md. at 57, 763 A.2d 136. If the statutory language in

question is unambiguous when construed according to its ordinary and everyday meaning, this Court "will give effect to the statute as written." *Pak v. Hoang,* 378 Md. 315, 323, 835 A.2d 1185 (2003) (quoting *Moore v. Miley,* 372 Md. 663, 677, 814 A.2d 557 (2003) (internal citation omitted)). This Court, however, will not add or delete words from the statute. *Gillespie v. State,* 370 Md. 219, 222, 804 A.2d 426 (2002). We will look "beyond the statute's plain language in discerning legislative intent" only where the statutory language is ambiguous. *Comptroller of the Treasury v. Clyde's of Chevy Chase, Inc.,* 377 Md. 471, 483, 833 A.2d 1014 (2003). *Motor Vehicle Admin. v. Jones,* 380 Md. 164, 175–76, 844 A.2d 388 (2004).

Some legislative history, although not determinative, is helpful. The predecessor statute to LE section 9–1106, codified at Md.Code (1957, 1985 Repl.Vol.), Art. 101 section 41, provided:

**False claims; penalty.**

Any person who shall knowingly secure or attempt to secure larger compensation or compensation for a longer term than he is entitled to, or knowingly secure or attempt to secure compensation when he is not entitled to any, shall be guilty of a misdemeanor, and upon conviction thereof shall be fined not exceeding five hundred dollars or imprisoned not exceeding twelve months, or both, in the discretion of the court, and shall from and after such conviction, cease to receive any compensation.

In 1991, that section was recodified without substantial change as LE section 9–1106. 1991 Md. Laws ch. 8.

In 1993, the General Assembly enacted House Bill 673, which amended LE section 9–1106 to increase the penalty for the purpose of deterring abuse of the workers' compensation benefits system, and to provide the Commission with the authority to order an individual wrongfully obtaining benefits to reimburse the payor of those benefits. As originally proposed, both amendments would have been included in LE section 9–1106. 1993 Md. Laws ch. 171. As enacted, howev-

er, the reimbursement provision was set forth in a separate statute, now codified at LE section 9–310.1, which is substantially the same as the current version of that statute. 1993 Md. Laws ch. 171.

HB 673 also amended LE section 9–1106 to read:

(a) A person may not knowingly obtain or knowingly attempt to obtain compensation to which the person is not entitled.

(b) A person who violates this section, on conviction:

(1) is subject to the penalties under Article 27, § 342 of the Code; and

(2) may not receive compensation.

In 1994, the General Assembly enacted HB 236, which amended LE section 9–1106 to its current form, substituting the word "affect" for the word "obtain," and adding the fraudulent representation requirement. 1994 Md. Laws ch. 540. The purpose behind the amendment was to permit the prosecution and conviction of those individuals who are not themselves claimants, but assist claimants in wrongfully obtaining workers' compensation benefits.

While the misdemeanor and penalty language was removed and replaced by reference to the penalties provided in the theft statute, the legislative history shows that LE section 9–1106 remained a criminal statute. The General Assembly considered various amendments to LE section 9–1106, specifically with regard to an increase in penalty. In an early proposal, a violation of the statute was to be changed from a misdemeanor offense to a felony offense, and the penalty was to increase to a $10,000 fine and five years' imprisonment. 1993 Md. Laws ch. 171. Later proposals suggested that it remain a felony offense, but that the penalty be made a fine of $5,000 and imprisonment of two years. 1993 Md. Laws ch. 171. The only amendment that was accepted is reflected by the current version of LE section 9–1106. The current penalty provision for a violation of that section incorporates the penalty provided under the theft statute, which varies depending upon the amount of the theft. It thus appears that the

General Assembly was unable to agree on a single penalty and compromised by tying the penalty into the amount of the benefits obtained by fraud in accordance with the penalties provided in the theft statute.[1]

It is clear from the plain language of LE section 9–1106, and from the legislative history behind the enactment of that section, that the statute is a criminal statute, authorizing a court to find guilt or innocence, and to impose penalties of imprisonment and payment of fines upon conviction. In addition, if a defendant is convicted of violating LE section 9–1106(a), then, pursuant to LE section 9–1106(b)(2), the Commission may prohibit him from ever receiving workers' compensation benefits. The words "on conviction," as used in the statute, are conditional: the Commission obtains its authority to prohibit a defendant from ever receiving benefits only after a court has found him guilty of violating the statute. The Commission does not have authority or jurisdiction to "convict" a person of violating LE section 9–1106(a); only a court may do so.

The Commission has the authority, under LE section 9–310.1, to hold a hearing for the purpose of determining whether a fraud has been committed, and to order reimbursement of any benefits obtained by fraud. That authority, however, does not extend to LE section 9–1106. The clear language of that section requires a conviction by a court before the Commission may enforce the penalty under subsection (b)(2), as the Commission is without the power to convict anyone.

Regardless of whether LE section 9–301.1 applies, Kelly cannot be denied benefits by the Commission as a penalty under LE section 9–1106(b)(2). Kelly was not convicted of the charged violation of LE section 1106(a); he was convicted only of theft. The LE section 9–1106 charge was *nol prossed.* No

---

1.  Further, certain fiscal reports contained in the bill file, discussing the possible increase in state revenues based upon the amendments, state that such a number will vary based upon the rate of conviction and the collection of fines in the district and circuit courts.

matter what similarities there may be between the theft statute and LE section 9–1106, they are separate laws. The Commission is without the authority to prohibit Kelly from receiving benefits under LE section 9–1106(b)(2) based upon his conviction for theft; the condition that would have to have occurred for the Commission to have such authority—a conviction for violating LE section 9–1106(a)—did not occur. Kelly, therefore, is entitled to pursue his permanent partial disability claim before the Commission.[2]

**JUDGMENT REVERSED. CASE REMANDED TO THE CIRCUIT COURT FOR BALTIMORE COUNTY WITH INSTRUCTIONS TO REVERSE THE DECISION OF THE COMMISSION AND TO REMAND THE CASE TO THE COMMISSION FOR PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS TO BE PAID BY THE APPELLEES.**

---

**2.** Kelly made alternative arguments about the constitutionality of LE section 9–1106 that are not necessary to address and, indeed, are inapplicable, given our disposition of this appeal.