**STATE of Missouri, Respondent,**

v.

**Eugene Bataan AILSHIRE, Appellant.**

**No. WD 34347.**

Missouri Court of Appeals,
Western District.

Jan. 24, 1984.

---

L.R. Magee, Kansas City, for appellant.

John Ashcroft, Atty. Gen., Janet E. Papageorge, Asst. Atty. Gen., Jefferson City, for respondent.

Before PRITCHARD, P.J., and SHANGLER and BERREY, JJ.

BERREY, Judge.

The defendant was convicted of attempted second degree arson, Section 564.011, RSMo.,[1] by a jury in the Circuit Court of Lafayette County. Under the persistent offender act, Section 558.016, RSMo.Supp. 1982, and in accordance with the verdict, the trial judge sentenced the defendant to a term of seven (7) years imprisonment. The defendant now appeals alleging that the trial court erred because: (1) the evidence was insufficient to support the verdict, (2) the verdict directing instruction was not supported by the evidence, and (3) the prosecutor improperly commented on the range of punishment during the voir dire examination of the jury. Judgment is affirmed.

1. All sectional references are to Revised Statutes of Missouri, 1978, unless otherwise indicated.

The building involved in this case is a house located at 408 West South Street, in Richmond, Ray County. The owner, Mrs. Brenda Bales Russell, has lived in the house intermittently since 1979. During late 1981 and early 1982 Brenda (then Miss Bales) lived in the house with Fred Bray, the defendant's cousin. Because of Bray's drinking problem, Brenda moved out of the house in March of 1982. Upon moving, she locked the house thereby causing Bray to establish residence elsewhere. Bray subsequently moved into the defendant's home; Brenda's house remained unoccupied and all the utilities had been previously shut-off, including the hot-water heater.

In the early morning hours of May 24, 1982, at approximately 1:00 a.m., Officer Russell Rogers of the Richmond Police Department was on routine patrol when he observed "flames coming out of a stairwell of a house at 408 West South Street, and the defendant was in that stairwell." The defendant was clad in a red t-shirt and blue jeans. Rogers was 20 to 30 feet away when he directed his patrol car's spotlight at the defendant, illuminating his face. At trial, Rogers identified the defendant as the man that he saw on the morning of May 24.

The defendant then ran from the stairwell, crossed a vacant lot and eventually disappeared into the darkness. As Officer Rogers pursued the defendant, a car which had been parked nearby, a green Oldsmobile with a broken taillight, sped off. Unable to stop either the defendant or the vehicle, Officer Rogers radioed in a description of both and proceeded to the stairwell.

Officer Rogers stamped out the small fire of leaves and debris burning on the carpeted, concrete steps. The fire was confined to the bottom three steps. The wooden door to the basement was unhinged and only a screen door remained in place. Officer Rogers, noting the strong odor of gasoline and fearing that an explosion was imminent, did not enter the basement. Instead, he went to the front door and, believing the

house to be occupied, attempted to awaken the occupants. The fire department arrived shortly thereafter and Officer Rogers commenced a search for the defendant.

The subsequent investigation of the basement by the fire department revealed that there was a strong odor of gasoline and a liquid had been splashed on the walls and the debris on the basement floor. A battered gasoline can was found in the yard approximately 30 feet from the house.

Officer James Park, shortly after receiving the description of the green Oldsmobile, spotted a vehicle matching that description and stopped it. He arrested the driver, Timothy Young, and the lone passenger, Fred Bray, and then transported them to the police station.

Officer Rogers, continuing his search of the vicinity, noticed that the porch light of a house located at 509 Charles Street blinked on and off. He went to the house and was admitted by Alma Hendrix, the owner and a first cousin-in-law of the defendant. Inside the house, Officer Rogers observed the defendant talking on a telephone in the kitchen. The defendant was wearing a red t-shirt and blue jeans. Officer Rogers arrested the defendant, gave him the *Miranda* warning, and then transported him to the police station.

At trial, Mrs. Hendrix testified that the defendant arrived at her home at approximately 2:30 A.M. He told Mrs. Hendrix that he had been playing poker at the depot. The defendant asked to use the telephone to call his wife because "the people he was with had run off and left him . . ." and he needed a ride home.

In his defense, the defendant testified that he was stranded by Young and Bray after receiving a ride from them to Richmond. The defendant also testified that he went to Richmond to see Gerald Anderson about potential employment. Anderson was not home, and after waiting for quite sometime, the defendant walked to the Hendrix residence in order to telephone his wife.

**I**

Attempted arson is usually a crime of stealth and seldom committed in the view of witnesses; hence, guilt must ordinarily be proven by circumstantial evidence. *State v. Simpson,* 606 S.W.2d 514, 518 (Mo.App.1980). In such a case the facts and circumstances on which the state relies must be consistent with each other, consistent with guilt, and inconsistent with every rational hypothesis of innocence. *State v. Harris,* 639 S.W.2d 122, 125 (Mo.App.1982). The facts and circumstances, however, need not demonstrate the impossibility of innocence, *Harris, supra* at 126, and both the guilty agency of the defendant and incendiary origin of the fire may be established by circumstantial evidence. *State v. Parker,* 543 S.W.2d 236, 242 (Mo.App.1976).

In reviewing the sufficiency of the evidence, even where wholly circumstantial, we view the evidence in the light most favorable to the state and all contrary evidence and inferences drawn therefrom must be disregarded. *Simpson, supra* at 518. Accordingly, the evidence in this case can only lead to the conclusion that the defendant is guilty of attempted arson.

Officer Rogers positively identified the defendant as the man that he saw in the stairwell of the house at 408 West South Street on May 24. Officer Rogers had directed his spotlight at the defendant, it shown directly on his face as he ran west from the stairwell and then fled across a vacant lot. This fact distinguishes the instant case from the case relied upon by the defendant, *State v. Siraguso,* 610 S.W.2d 338 (Mo.App.1980), wherein we held that flight from a fire or other danger out of human fear is conduct consistent with innocence. In *Siraguso,* the defendant was lawfully on the premises and fled from the house engulfed in flames and enshrouded in smoke and stated to those nearby that the house was on fire. Here, the defendant fled when illuminated by the patrol car's spotlight and he continued his flight after Rogers commenced pursuit. These facts indicate that the defendant's flight was consistent with the fear of apprehension rather

than with the fear of fire or other danger and, therefore, is a valid component of circumstantial proof of guilt. *Siraguso, supra* at 343.

The origin of the fire was incendiary. The strong odor of gasoline was present in the stairwell and basement, a liquid (presumably gasoline) had been splashed on the basement walls, and a gas can was found 30 feet from the house.

■ The preceding facts establish presence at the scene, opportunity and ability to commit the crime, and flight. Moreover, the jury had the right to believe or disbelieve all, or part, of the defendant's testimony. *See State v. Moon,* 602 S.W.2d 828, 831 (Mo.App.1980). Here, the jury rejected the defendant's alibi testimony.

The circumstantial evidence in this case is more incriminating than the evidence in *State v. Harris, supra,* wherein the defendant's arson conviction was upheld. Based upon this evidence a jury could have reasonably inferred that the defendant started the fire in the stairwell of the house.

II

The next point assigned by the defendant is that the trial court erred in submitting the verdict directing instruction because there was no evidence that the defendant knowingly damaged an inhabitable structure. The defendant attaches significance to an insignificant fact: lack of damage.

■ The defendant was charged with attempted arson, not the consummated offense of arson. Pursuant to Section 564.-011:

A person is guilty of attempt to commit an offense when, with the purpose of committing the offense, he does any act which is a substantial step towards the commission of the offense. A "substantial step" is conduct which is strongly corroborative of the firmness of the actor's purpose to complete the commission of the crime.

The presence of gasoline splashed on the basement walls, gasoline vapors in the stairwell, and a fire burning on the bottom three steps, in close proximity to the basement door, constituted a "substantial step" towards the commission of the offense of arson.

■ Damage to the house itself, although an element of arson, is not an element of attempted arson. *State v. Porter,* 458 S.W.2d 256, 259 (Mo.1970). Hence, the lack of damage does not preclude submission of the verdict directing instruction on attempted arson. Defendant's point is without merit.

III

■ The defendant's final point is that the trial court erred in not granting his motion for a mistrial after the prosecuting attorney, during voir dire, informed the jury that the "crime carries a punishment—possible punishment range of two to five years in the penitentiary, or one day to one year in the county jail, or up to $5,000 fine." The defendant contends that because he was charged under the persistent offender act, which mandates that the trial judge rather than the jury assess punishment, the jury was misled by the prosecutor's comments.

In *State v. Hunter,* 586 S.W.2d 345 (Mo. banc 1979), the Supreme Court confronted a similar question of whether a verdict directing instruction which had referred to the range of punishment influenced the jury's decision to convict the defendant. The Court held that the defendant, a persistent offender, was not prejudiced by such an instruction noting that:

Punishment was to be determined only if appellant were found guilty beyond a reasonable doubt. While it may be within reason that a jury might consider punishment concurrently with guilt, such reasoning does not compel the conclusion that a jury would decide to convict . . . , not on the basis of guilt, but on the basis that it could control the assessment of punishment. . . . This court cannot find prejudice to this appellant on the basis of speculation. . . . *Id.* at 348.

In the instant case the jury was not even instructed on the range of punishment. The jury's only options were to find the defendant guilty beyond a reasonable doubt or not guilty. The prosecutor's comments during voir dire, although inappropriate, do not rise to the level of the potentially prejudicial instruction in *Hunter*. The defendant's point is denied.

Judgment is affirmed.

All concur.