REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND


No. 460

September Term, 2014

_____


IN RE: KEVIN T.

_____


Leahy,
Reed,
Eyler, James R.
 (Retired, Specially Assigned),

JJ.

_____

Opinion by, Eyler, James R., J.

_____


Filed: April 30, 2015

The Circuit Court for Prince George's County, sitting as a juvenile court, found appellant, Kevin T.[1] to be involved in the delinquent acts of second-degree assault and participation in a criminal gang. Appellant was committed to "Level B" placement. A timely appeal was filed, in which appellant presents the following questions for our review:

> 1. Did the juvenile court err in permitting testimony by Officer Daniel Lewis that after Kevin T. was taken into custody he "refused to make a statement"?
>
> 2. Was the evidence insufficient to sustain Kevin T.'s conviction for participation in a criminal gang under § 9-804(a) of the Criminal Law Article?

For the reasons that follow, we shall answer (1) yes to the first question, but conclude that any error was harmless, and (2) yes to the second question. Accordingly, we shall reverse, in part, the judgments of the circuit court.

## BACKGROUND

In 2013, Austin R. was a student at High Point High School in Prince George's County. Austin testified that, in April of 2013, appellant tried to fight him at school because of "run ins" that Austin previously had with the gang known as MS-13. On August 19, 2013, Austin was called into the security office of the school. He was warned that members of MS-13 were planning to fight him. Later that day, appellant, who was accompanied by Michael C. and Darwin M., followed Austin on his way to class and yelled "Salvatrucha." Austin responded "I don't give an F who you are," and continued walking to class.

---

[1] In the proceedings before the circuit court, appellant is referred to as Kevin O., but is referred to on appeal as Kevin T.

Appellant, Michael and Darwin continued to follow Austin. Austin testified that all three wanted to fight him, "one on one." Michael said, "Let's fight," and threw a punch at Austin, but missed. Austin then "just went at it" and began to pummel Michael, hitting him at least 25 times. Michael continued to fight back. According to Austin, appellant and Darwin "noticed that [Michael] was getting seriously beat" by Austin, and "jumped in" to the fight, trying to grab Austin and throw him to the ground. Austin testified that he threw appellant and Darwin off him and to the ground. School security then broke up the fight, and everyone was taken into a security office.

Sergeant George Norris, who was called as the State's expert on MS-13 gangs in the Maryland area, explained that MS-13 stands for Mara Salvatrucha, and that the goal of MS-13 is to be "the most powerful or most controlling gang" in the community. Sergeant Norris testified that the members of MS-13 achieve this goal "through fear, intimidation and violence." He explained that MS-13 members shout out their gang name to announce who they are and intimidate others. Sergeant Norris stated that Michael C. and Darwin M. were members or associates of MS-13, and that appellant was "at the least associated with MS-13."

Michael C. was called as a witness for the defense. He testified that he was involved in a fight with Austin on August 19, 2013, but that Austin initiated the fight, and no one else was involved. He denied being a member of a gang, and denied having friends that are

2

members of MS-13. He stated that he did not believe that appellant was involved in any gang activity.

Additional facts will be introduced in the discussion as they become relevant.

## DISCUSSION

### 1.  Refusal to Make Statement

Officer Daniel Lewis, an investigator counselor at High Point High School, testified that on the day in question, he responded to a call for an altercation outside in the courtyard. After describing how he and several of the security assistants broke up the fight, the following exchange occurred:

[PROSECUTOR]: Did the [appellant] say anything to you regarding the fight?

OFFICER LEWIS: No, he actually refused to make a statement.

[DEFENSE COUNSEL]: Objection.  Request for mistrial.

THE COURT: Overruled.  Request for mistrial denied.

[PROSECUTOR]: So he refused to make a statement?

OFFICER LEWIS: Right, we - -

[DEFENSE COUNSEL]: Objection, move for mistrial.

THE COURT: What is the basis for that?

[DEFENSE COUNSEL]: Your Honor, he has every right to implement his Fifth Amendment Right.  By the State bringing it that he has implicated his Fifth Amendment Right, that violates the right itself and so Your Honor, you are not - - he is not receiving a fair trial and that he made no statement, that cannot be used against him.

3

[PROSECUTOR]: And Your Honor, it is not being used against him in any way.

[DEFENSE COUNSEL]: Then it is irrelevant.

THE COURT: Overruled, objection. [sic]

Appellant argues that the court's actions in overruling the objection constituted reversible error because post-arrest silence is inadmissible as substantive evidence of a criminal defendant's guilt.

The State responds preliminarily that this argument was not properly preserved for appellate review, because appellant's argument focuses only on inadmissibility of post-arrest silence, and there is no evidence in the record that appellant had been placed under arrest at the time he refused to make a statement. The State posits that the refusal to make a statement appeared to occur at the time Officer Lewis was breaking up the fight and prior to any arrest. Therefore, according to the State, the issue is whether the court should have admitted evidence of appellant's *prearrest* silence. That issue was not put before the juvenile court and not argued on appeal. Alternatively, the State maintains that any error was harmless.

It would have been error for the court to admit the fact of appellant's silence into evidence regardless of whether the refusal took place prior to his arrest (and in the presence of Officer Lewis) or afterward. As the State concedes, "prearrest silence in police presence is not admissible as substantive evidence of guilt under Maryland evidence law." *Weitzel v. State,* 384 Md. 451, 461 (2004). And, as appellant points out, "[p]ost-arrest silence is inadmissible as substantive evidence of a criminal defendant's guilt, regardless of whether

4

that silence precedes the recitation to the defendant of *Miranda* advisements." *Kosh v. State*, 382 Md. 218, 220 (2004). Our review of the record indicates that it is unclear whether the refusal to make a statement took place before or after appellant was arrested.

Assuming the issue was properly preserved, we conclude that any error was harmless beyond a reasonable doubt. After Officer Lewis mentioned that appellant refused to make a statement, the prosecutor indicated to the court that said refusal was not being used against appellant in any way, and she made no attempt to draw an inference of guilt from appellant's silence in closing argument. In addition, there is no indication that the court was influenced by or relied on the evidence of appellant's refusal to make a statement in its ruling. In short, no inference was argued, and none was drawn. *See Dorsey v. State*, 276 Md. 638, 659 (1976) (error will be harmless when reviewing court, upon independent review, is able to declare a belief beyond a reasonable doubt that there is no reasonable possibility that the error contributed to the verdict).

## 2. Sufficiency of the Evidence

The Court of Appeals has explained the standard of review in juvenile delinquency cases as follows:

> In a criminal case, the appropriate inquiry is not whether the reviewing court believes that the evidence establishes guilt beyond a reasonable doubt, but rather, whether after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

5

We have applied the same standard of review in juvenile delinquency cases. Consistently, we have held that the judgment of the trial court will not be disturbed unless the trial judge's findings of fact are clearly erroneous.

*In re Anthony W.*, 388 Md. 251, 261 (2005)(citations and quotation marks omitted).

Appellant was charged with a violation of Md. Code Ann., Criminal Law Article ("C.L.") § 9-804 (2002, 2012 Repl. Vol), which provides:

**§ 9-804. Participation in a criminal gang prohibited.**

(a) *Prohibited acts*. -- A person may not:

(1) participate in a criminal gang knowing that the members of the gang engage in a pattern of criminal gang activity; and

(2) knowingly and willfully direct or participate in an underlying crime, or act by a juvenile that would be an underlying crime if committed by an adult, committed for the benefit of, at the direction of, or in association with a criminal gang.

C.L. § 9-801(c) defines the term "criminal gang":

c) "Criminal gang" means a group or association of three or more persons whose members:

(1) individually or collectively engage in a pattern of criminal gang activity;

(2) have as one of their primary objectives or activities the commission of one or more underlying crimes, including acts by juveniles that would be underlying crimes if committed by adults; and

(3) have in common an over or covert organizational or command structure.

C.L. § 9-801(d) defines "pattern of criminal gang activity" as "the commission of, attempted commission of, conspiracy to commit, or solicitation of two or more underlying

6

crimes or acts by a juvenile . . . provided the crimes or acts were not part of the same incident."

Finally, C.L. § 9-801(f) is a list of the crimes that constitute an "underlying crime":

(1) a crime of violence as defined under § 14-101 of this article[2];

(2) a violation of § 3-203 (second degree assault), § 4-203 (wearing, carrying or transporting a handgun), § 9-302 (inducing false testimony or avoidance of subpoena), § 9-303 (retaliation for testimony), § 9-305 (intimidating or corrupting juror), § 11-303 (human trafficking), § 11-304 (receiving earnings of prostitute), or § 11-306(a)(2), (3), or (4) (house of prostitution) of this article;

(3) a felony violation of § 3-701 (extortion), § 4-503 (manufacture or possession of destructive device), § 5-602 (distribution of CDS), § 5-603 (manufacturing CDS or equipment), § 6-103 (second degree arson), § 6-202 (first degree burglary), § 6-203 (second degree burglary), § 6-204 (third degree burglary), § 7-104 (theft), or § 7-105 (unauthorized use of a motor vehicle) of this article; or

---

[2] C.L. § 14-101(a) defines "crime of violence" as:

(1) abduction; (2) arson in the first degree; (3) kidnapping; (4) manslaughter, except involuntary manslaughter; (5) mayhem; (6) maiming, as previously proscribed under former Article 27, §§ 385 and 386 of the Code; (7) murder; (8) rape; (9) robbery under § 3-402 or § 3-403 of this article; (10) carjacking; (11) armed carjacking; (12) sexual offense in the first degree; (13) sexual offense in the second degree; (14) use of a handgun in the commission of a felony or other crime of violence; (15) child abuse in the first degree under § 3-601 of this article; (16) sexual abuse of a minor under § 3-602 of this article if . . .; (17) an attempt to commit any of the crimes described in items (1) through (16) of this subsection; (18) continuing course of conduct with a child under § 3-315 of this article; (19) assault in the first degree; (20) assault with intent to murder; (21) assault with intent to rape; (22) assault with intent to rob; (23) assault with intent to commit a sexual offense in the first degree; and (24) assault with intent to commit a sexual offense in the second degree.

7

(4) a felony violation of § 5-133 of the Public Safety Article.

Appellant contends that the adjudication for participation in a criminal gang must be reversed because, *inter alia*, the State failed to prove that MS-13 was engaged in a "pattern of criminal gang activity," *i.e.*, that members of the gang actually committed (or attempted to commit) two or more acts of specified criminal conduct.[3,4] We concur.

In order to prove a violation of § 9-804, the State was required to show that the MS-13 gang engaged in a pattern of criminal activity as defined in § 9-801(d). Our review of the record indicates that there was no evidence before the circuit court regarding "underlying crimes" that MS-13 either committed, attempted to commit or had conspired to commit.

Sergeant Norris, the State's MS-13 expert, never testified to specific crimes attributable to MS-13. The prosecutor appeared to be getting to that point, but stopped short of asking about specific criminal activity that would have established that MS-13 engaged in a pattern of criminal gang activity:

---

[3] Appellant also argues that the State failed to satisfy its burden to prove the elements contained in § 9-804(a)(2), specifically, "that the alleged assault in the school's courtyard was 'committed for the benefit of, at the direction of, or in association with a criminal gang.'" Because we conclude that the State failed to prove the elements in § 9-804(a)(1), and that the adjudication of involvement in the delinquent act of participation in a criminal gang must be reversed on that ground, we need not address appellant's argument under § 9-804(a)(2).

[4] Although appellant did not move for judgment of acquittal on these grounds, we shall review the issue in this appeal. "[A] defendant in a juvenile proceeding is not required to make a motion for judgment of acquittal under Rule 4-324(a) in order to preserve his right to appellate review of the sufficiency of the evidence." *In re Antoine M.*, 394 Md. 491, 502-03 (2006)

8

[PROSECUTOR]: Sergeant Norris, I am going to direct you specifically to the gang known as MS-13, what does MS-13 stand for?

SERGEANT NORRIS: MS-13 stands for Mara Salvatrucha.

*　　*　　*

Q. Is the gang known as MS-13, are they prevalent in Prince George's County? Do they have a presence in Prince George's County? My apologies? [sic]

A. Yes, they do.

Q. Is that - - does that presence concentrate in a certain area in Prince George's County?

A. Langley Park and the surrounding areas is the dominant area that they are present in, however they are present throughout the county.

Q. Okay. Please describe for the Court any - - let me back up, I withdraw that question. MS-13, what is their basic, what is their basic goal as a gang?

A. To be the most powerful or most controlling gang there is in their community that they are in.

Q. And what are some of the ways that they achieve this goal?

A. Through fear, intimidation and violence.

Q. What if any role does violence in particular have within MS-13?

THE COURT: State, let me ask a question, what are you trying to get to?

[PROSECUTOR]: I am trying to get to Sergeant Norris talking about specifically what does MS-13 do with violence and what are typical things that they - - they say or gang signs that they have maybe before they commit an act of violence, specifically.

*　　*　　*

9

THE COURT: I know that he has been offered as an expert and I have been allowing him to testify as an expert and have heard all of the testimony as to his training and experience and his occupation. The next question is what do you know about this young man in this case and his affiliation.

[PROSECUTOR]: Yes, Your Honor.

[PROSECUTOR]: Sergeant Norris, what do you know about [appellant]. And any - - if any affiliation he has with MS-13?

SERGEANT NORRIS: We are viewing the documents that you have as well as his associates or co-defendants. It is my opinion that he is at the least associated with MS-13.

In response to appellant's argument that the evidence was insufficient to sustain the finding of involvement in the offense of participation in a criminal gang, the State acknowledges that it was required to prove that members of the gang engage in a pattern of criminal gang activity. The State proffers that it met this burden by showing that appellant had committed other crimes as part of the MS-13 gang and points to the following evidence in the record:

- Officer Lewis testified that he had several "contacts" with appellant, including other incidents of gang activity;

- Austin testified that appellant had approached him before because of his past in the MS-13 gang; and

- Austin testified that appellant was a member of MS-13 and described another incident in which "a group of individuals from MS-13, including Kevin, came out and tried to fight him.

These references in the transcript to non-specific incidents of gang activity and attempts to fight, however, are insufficient to satisfy the State's burden of proof. The statute

10

requires the State to prove not only that appellant was a member of a criminal gang, but that the gang, in this instance MS-13, engaged in a pattern of criminal behavior, *i.e.*, committed, attempted to commit, or conspired to commit two or more of the specific "underlying crimes" listed in § 9-801(f).  There was no such evidence before the court.  Officer Lewis' testimony does not establish this required element.  Officer Lewis testified as follows:

[PROSECUTOR]: How do you know [appellant]?

OFFICER LEWIS: He was attending High Point High School and through several contacts that I have had with him at the school.

Q.  What types of contact have you specifically had with him at the school?

A.  Just involvement with different incidents involving his conduct and behavior or being where he is not supposed to be.

\* \* \*

Q.  Have you been involved in any incidents with him concerning any type of gang activity?

A.  Yes.

\* \* \*

Q.  Have you had any interactions with [appellant] and any gangs?

A.  Yes.

Q.  Please describe those interactions.

A.  Just different incidents that have taken place with him and his affiliates within the school.  Again in reference to his conduct or where he is supposed to be at in the building or being brought back by the Prince George's County Police on several occasions.

11

* * *

Q.  Are they - - is there any specific gang in which that you know of that [appellant] is affiliated with?

A.  The gang that is known as the MS-13.

Similarly, Austin's testimony that appellant had approached him on previous occasions and tried to fight him was insufficient to establish that MS-13 was engaged in a "pattern of criminal gang activity" as that term is defined in the statute.  Accordingly, we conclude that the court's finding that appellant was involved in the delinquent act of participation in a criminal gang under C.L. § 9-804 was clearly erroneous, and thus reverse the circuit court's finding of involvement on that charge.

**THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY'S FINDING OF INVOLVED IN THE OFFENSE OF PARTICIPATION IN A CRIMINAL GANG REVERSED.  JUDGMENTS OTHERWISE AFFIRMED.  COSTS TO BE PAID ½ BY PRINCE GEORGE'S COUNTY AND ½ BY APPELLANT.**