Case No. 22-J-16-000060

REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 1039

September Term, 2016

IN RE: DAVID P.

Wright,
Kehoe,
Shaw Geter,

JJ.

Opinion by Wright, J.

Filed: September 27, 2017

This appeal arises out of a judgment of the Circuit Court for Wicomico County, sitting as a juvenile court, finding that David P. ("David") was involved in attempted first-degree arson and reckless endangerment. At a subsequent disposition hearing, David was placed in the custody of the Maryland Department of Juvenile Services ("department") and sent to an out-of-state facility for detention.

David now appeals, questioning the sufficiency of the evidence as to both findings of involvement.

## QUESTIONS PRESENTED

We have reworded David's questions for clarity, as follows: [1]

I. Was the evidence sufficient to support the juvenile court's finding of David's involvement in attempted arson?

II. Was the evidence sufficient to support the juvenile court's finding of David's involvement in reckless endangerment?

III. Did the juvenile court err in denying the motion to suppress an out of court identification?

---

[1] In his brief, appellant asks:

1) Was the evidence sufficient to support David's involvement in attempted arson where there was no reasonable chance David's behavior could have resulted in the burning of a dwelling?

2) Was the evidence similarly insufficient to support David's involvement in reckless endangerment for the same reasons?

3) Did the court err in denying the motion to suppress an out of court identification when the identification occurred immediately after Ms. Nada's neighbors identified David for her and gave her "negative information" about him?

1

For the reasons stated below, we answer the first two questions in the negative. Accordingly, we vacate David's convictions, and we do not reach the third question.

**FACTS**

Nuzhat Nada provided testimony as to the following facts.

On March 21, 2016, Nada was at her residence at 205 Walnut Street, Salisbury, in Wicomico County. At 7:00 p.m. on that evening, Nada heard a noise at her door and walked over to open it. No one was standing at the doorway, but she observed a person running away. Nada later heard the noise a second time, and again opened the door to find no one there. She then stood by the door, waiting to hear the noise again. When the noise started for a third time, she immediately opened her door and saw David running from her doorstep, looking backwards over his shoulder. Nada then followed David to his house, at 121 Chestnut Street, with the intention of informing his mother about what had happened. However, Nada returned home without speaking to anyone at David's house.

A few minutes after returning home, Nada heard a noise at her door again. She opened the door to again see someone running away, and she saw two matches burning on the bricks in front of her door. Nada explained that the matches were about "one and a half feet away from the door," and that she has "a lot of wood and cones" on her other porch.

Nada then called the police. She testified that while waiting for the police, she stood by the matches and let them burn because she "didn't want to touch them." She testified that she did not extinguish the matches, but watched to make sure they did not

2

fly off, fearing that the matches could ignite dry leaves at the side of the house "because of the wind." Nada testified that the matches left scorch marks "on the bricks" in front of the home and that she had photos of the marks. No such photos were offered as evidence.

The police arrived and Nada conveyed her account of what had happened. An officer took Nada to 121 Chestnut for a show-up identification. Beforehand, neighborhood residents spoke with Nada about their own experiences with David.

Officer Brian Weglarz testified next for the State. He confirmed responding to a call at 205 Walnut Street and meeting with Nada at her residence. Weglarz further testified that he observed "two extinguished matches" in front of the home on a concrete area attached to the front door. Weglarz described the matches as "about two inches in length, the cut that you would find out of a match book." On cross examination, Weglarz answered affirmatively when asked if Nada had extinguished the matches by stepping on them, and he also answered affirmatively when asked if Nada "had to actually extinguish" the matches. Weglarz further testified that he did not see scorch or burn marks on the porch. Finally, Officer Carroll testified for the State and provided testimony regarding the circumstances of the show-up identification.[2] The above was the extent of the evidence actually presented at trial.

**STANDARD OF REVIEW**

---

[2] Because we do not reach David's question regarding the show-up identification, we have omitted the facts surrounding it.

3

The Court of Appeals has remarked: "In a juvenile delinquency matter, an appellate court will 'review the case on both the law and the evidence.' We review any conclusions of law *de novo,* but apply the clearly erroneous standard to findings of fact." *In re Elrich S.,* 416 Md. 15, 30 (2010) (internal citation omitted). This Court has noted that "[a] delinquent act is an act which would be a crime if committed by an adult." *In re Lavar D.,* 189 Md. App. 526, 585 (2009) (citing Md. Code (1973, 2013 Repl. Vol.), Courts & Judicial Proceedings Article § 3-8A-01(l)).

Accordingly, as to the sufficiency of the evidence, we apply to juvenile delinquency proceedings the same standard of review as in criminal trials:

> "Appellate review of the [trial] court's judgment on the evidence is limited to determining whether there is a sufficient evidentiary basis for the court's underlying factual findings. [T]he appropriate inquiry is not whether the reviewing court believes that the evidence establishes guilt beyond a reasonable doubt, but rather, whether after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."

*Elrich S.,* 416 Md. at 30 (quoting *In re Anthony W.,* 388 Md. 251, 261 (2005)); *see also In re Kevin T.,* 222 Md. App. 671, 676-77 (2015).

The State notes that circumstantial evidence suffices to affirm a conviction as long as "the circumstances support rational inferences from which the trier of fact could be convinced beyond a reasonable doubt of the guilt of the accused." *Painter v. State,* 157 Md. App. 1, 11 (2004) (citation omitted). "Circumstantial evidence is as persuasive as direct evidence. With each, triers of fact must use their experiences with people and weigh probabilities." *In re Lavar D.,* 189 Md. at 586 (quoting *Mangum v. State,* 342 Md. 392, 400 (1996)).

4

The juvenile court, as the finder of fact, "possesses the ability to choose among differing inferences that might possibly be made from a factual situation and [the appellate court] must give deference to all reasonable inferences [that] the fact-finder draws." *In re Landon G.,* 214 Md. App. 483, 491 (2013) (citations omitted). "However, [w]hen an action has been tried without a jury, the appellate court will review the case on both the law and the evidence. It will not set aside the judgment of the trial court on the evidence unless clearly erroneous, and will give due regard to the opportunity of the trial court to judge the credibility of the witnesses." *In re Antoine H.,* 319 Md. 101, 108 (1990) (quoting Md. Rule 8-131(c)).

## DISCUSSION

### I. Sufficiency of the Evidence - Attempted Arson

David avers that the State failed to meet its burden for the charge of attempted arson, because it failed to prove the requisite *mens rea* for attempted first-degree arson – a specific intent crime. *Holbrook v. State,* 364 Md. 354, 371 (2001).

The crime of first-degree arson is set out by statute:

(a) A person may not willfully and maliciously set fire to or burn:

(1) a dwelling; or

(2) a structure in or on which an individual who is not a participant is present.

Md. Code (2002, 2012 Repl. Vol.), Criminal Law Article ("CL") § 6-102(a). The statutory offense expands the universe of the buildings covered, but retains the common-law definition of arson which has four elements:

5

> (1) that the building burned was a dwelling house or outbuilding within the curtilage; (2) that the building burned was occupied by another; (3) that the building was actually burned, as mere scorching would not suffice; and, (4) that the accused's *mens rea* was willful and malicious.

*Holbrook,* 364 Md. at 367 (citation and footnote omitted). No arson takes place where "the fire is not communicated to any part of the structure itself." *Hines v. State,* 34 Md. App. 612, 618 (1977) (citation omitted).

Both parties agree that arson is a specific intent crime. "A specific intent is not simply the intent to do the immediate act but embraces the requirement that the mind be conscious of a more remote purpose or design which shall eventuate from the doing of the immediate act." *Smith v. State,* 41 Md. App. 277, 305 (1979). Applying this understanding to arson, the *mens rea* requires not only having an intent to do the immediate act of setting a fire, but also embracing the purpose of causing harm to person or property. Further, "[m]ere knowledge that a result is substantially certain to follow from one's actions is not the same as the specific intent[.]" *Spencer v. State,* 450 Md. 530, 567 (2016) (quoting *Thornton v. State,* 397 Md. 704, 738 (2007) (internal citation omitted)).

Although the State agrees that the "willful and malicious" standard imposes a specific intent *mens rea* requirement, the State, first relying on *Richmond v. State,* 326 Md. 257 (1992), avers that "setting a fire with reckless and wanton disregard for the consequences satisfies the willful and malicious requirement" of the statute. *Id.* at 268 (citation omitted). "While this reasoning may have been true in 1992 when *Richmond* was filed, it is not so today." *Holbrook,* 364 Md. at 371. This is the case because the

6

General Assembly repealed the arson statute in 1993, one year after *Richmond,* and enacted new definitional provisions defining "willfully" and "maliciously." *Id.* "Maliciously" is defined as "acting with intent to harm a person or property," CL § 6-101(c), and "willfully," is defined as "acting intentionally, knowingly, and purposely." *Id.* § 6-101(e). Therefore, in order to be convicted of arson, a person must have acted "with intent to harm a person or property," and "intentionally, knowingly, and purposefully." *Holbrook,* 364 Md. at 371.

The State interprets the statutory change and *Holbrook* to require specific intent to do harm, but not more than reckless or wanton disregard for the consequences. The State posits that a person may be convicted where specific intent is found as to the conduct – *i.e.*, the lighting of a match, but mere recklessness is found as to the consequences that follow – *i.e.*, the burning of the building.

We find no merit in this position, as it ignores the concept of a specific intent crime as one in which the party has not only the "intent to do the immediate act" but where his mind is also "conscious of a more remote purpose or design which shall eventuate from the doing of the immediate act." *Smith,* 41 Md. App. at 305. We also decline the State's invitation to examine the legislative history of the statute to determine the legislative intent to support the State's position. Rather, we continue to follow the standard stated in *Holbrook* - in order to be convicted of arson, a person must have acted "with intent to harm a person or property," and acted "intentionally, knowingly, and purposefully." 364 Md. at 371. Although David may have acted without regard for the consequences of his actions, following the General Assembly's abrogation of the

7

common law, the State's assertion—that specific intent to light a fire, but with only reckless and wanton disregard for the consequences, will satisfy the *mens rea* required for an arson conviction—is incorrect.

Here, David was charged with attempted arson rather than arson itself. A conviction for an attempt crime does not require completion of the crime, but rather "[a] person is guilty of a criminal attempt when, with intent to commit a crime, the person engages in conduct which constitutes a substantial step toward the commission of that crime whether or not his intention is accomplished." *Grill v. State,* 337 Md. 91, 94 (1995) (citation omitted).

An attempt crime has a *mens rea* element of *intending* to commit the underlying crime.[3] *Dabney v. State,* 159 Md. App. 225, 234-35 (2004). "[A] defendant must be charged with an attempt to commit a specifically designated crime, and it is to that crime one must look in identifying the kind of intent required." *Young v. State,* 303 Md. 298, 306 n.5 (1985) (citation omitted). "It is a mistake to speak of attempts generally as having a single monolithic intent element. Some attempts, to be sure, require a specific intent. Other attempts, however, require only a general intent. *An attempt to commit a*

---

[3] The State was required to prove "the intent to commit a crime coupled with some overt act beyond mere preparation in furtherance of the crime." *Hardy v. State,* 301 Md. 124, 128 (1984); *Spencer,* 450 Md. at 567. An attempt requires an *actus reus* of whether the defendant took "a 'substantial step' as the criterion in determining whether an overt act is more than mere preparation to commit a crime." *Young,* 303 Md. 298, 311 (1985). In his briefs, David notes that he also believes that the lighting of the matches was not an adequate "substantial step" towards the completion of an arson, but focuses his attention on the State's failure to prove the required *mens rea*. We do the same.

*specific intent crime requires the same ultimate specific intent as would the consummated crime.*" *Wieland v. State,* 101 Md. App. 1, 40 (1994) (emphasis added).

The "requisite intent need not be proved by direct evidence." *Young,* 303 Md. at 306 (citation omitted). "It may be inferred as a matter of fact from the actor's conduct and the attendant circumstances." *Id.* (citations omitted).

As discussed *supra*, arson is a specific intent crime, and because an attempt to commit a specific intent crime requires the same ultimate specific intent as the consummated crime, the exact question before us is whether the evidence sufficed to prove that David had the specific intent to willfully and maliciously set fire to Nada's home. "Since intent is subjective and, without the cooperation of the accused, cannot be directly and objectively proven, its presence must be shown by established facts which permit a proper inference of its existence." *Spencer,* 450 Md. at 568 (citation and quotations omitted). Accordingly, our evaluation focuses on the circumstances surrounding David's actions, and the action itself, although we are looking to the actions to understand the actor's intent – not to evaluate the actions for sufficiency of the *actus reus*.

David states that, "[t]wo matchbook matches dropped on the flame-retardant landing in front of a home cannot constitute an overt act evincing specific intent to commit arson."

The facts again are as follows. After thrice causing a ruckus on her porch that brought Nada out of her home, David lit two matches and dropped them on the bricks of

9

Nada's front stoop, about one and a half feet away from her door. He then ran away. A wicker doormat was nearby, and there were quantities of dry leaves around the side of the house. Nada also had "a lot of wood and cones" on her other porch.

Although ample case law illustrates conduct that satisfies the elements and constitutes an attempted arson, very little case law illustrates conduct that does not rise to required level. We look to both Maryland and our sister states for guidance.

In *Maner v. State,* 159 S.E. 902 (Ga. App. 1931), the Court of Appeals of Georgia addressed the threshold for an attempt crime in an appeal related to attempted arson. The Court concluded that an attempted arson occurred, where "reasonable construction of the acts alleged . . . force one to the conclusion that such acts were committed for no purpose other than to set fire to the building, and thereby commit arson." *Id.* at 903.

The presence of an accelerant is a common characteristic in convictions for arson. *See State of Missouri v. Ailshire,* 664 S.W.2d 630, 633 (Mo. Ct. App. 1984) ("The presence of gasoline splashed on the basement walls, gasoline vapors in the stairwell, and a fire burning on the bottom three steps, in close proximity to the basement door, constituted a 'substantial step' towards the commission of the offense of arson."). The use of an accelerant allows a reasonable inference of intent, because it forces one to the conclusion that the actor was intending to set fire to a building, as there is no other rational purpose for conduct such as splashing gasoline on building walls.

Here, the State points to the "wicker mat nearby" where David "dropped two lit matches" as evidence to support the finding of involvement. The State avers that David's "'overt act' of lighting the matches, coupled with the fact that he dropped them where he

10

did, constituted a 'substantial step' towards the arson." The State seemingly asks that we infer the required intent from these actions. We agree that where David put the matches is relevant, but unlike the State, we believe that where he put the matches cuts *against* a finding of a malicious or willful intent to burning the dwelling. We explain.

Although flammable material was nearby, the matches were laid on an nonflammable material, and not on the wicker mat. Similarly, David could have easily collected the nearby pinecones or dry leaves to create an accelerant, but he did not do so. Where he laid the matches supports the conclusion that David was a juvenile playing with matches, not that he lit the match intending to set a fire. If an adult struck a match and threw it into an empty brick fireplace, we would not say that person was building a fire. Rather, to show intent to build a fire, we would understand that the person must first gather logs and sticks, arrange them, and only then, strike and lay the match. The mere striking and laying of a match on an nonflammable surface alone does not show intent to start a fire.

Further, the intent requirement is that David intended to set a fire to cause harm. Because of his prior behavior, Nada immediately went onto the porch as soon as she heard noise again—so quickly that she saw the matches still burning. David's behavior essentially put Nada on notice that mischief was occurring, allowing her to immediately respond to his subsequent actions, and thereby negating any remote chance that may have existed that the matches may have ignited nearby materials. This evidence is not a basis by which a reasonable fact-finder could conclude that David did have an intent to harm, which is the State's burden and which was not met in this case.

11

The State seems to ask us to affirm that David acted with specific intent, because he took a substantial step by laying the matches near the mat, and that his actions fell short of completion because the wind did not blow in such a way to carry the lit matches to the mat, while also blowing in such a way to not extinguish the matches, all before Nada came to the porch, despite her previous appearances. This theory of the case requires an external, uncontrollable, factor to intervene in order for the crime to reach fruition and therefore, undercuts the finding of specific intent.

Rather than viewing his actions as circumstances from which we can infer intent to maliciously set fire to her home, we instead infer a lack of specific intent to start a fire in order to burn the building or to cause harm to Nada herself. A "reasonable construction of the acts alleged" allows one to conclude that David was a reckless juvenile playing with matches, rather than facts which "force one to the conclusion that such acts were committed for no purpose other than to set fire to the building." *Maner,* 159 S.E. at 902-03. To allow a finding of involvement on these facts would allow a conviction for attempted first-degree arson every time that a person intentionally drops a still-burning cigarette butt on a sidewalk that happens to be feet away from a building where there are nearby leaves. This position completely ignores the requirement of intending to cause harm or acting purposefully or knowingly, and it expands the bounds of arson far beyond its original constraints.

For this reason and those discussed above, we conclude that the State failed to prove that David acted willfully or maliciously with an intent to burn the dwelling, and

that no rational trier of fact could have found this essential element of the crime beyond a reasonable doubt. *Elrich S.,* 416 Md. at 30.

## II. Sufficiency of the Evidence - Reckless Endangerment

Next, David asks if the evidence was sufficient to sustain the finding of his involvement in reckless endangerment.

CL § 3-204(a), provides, in relevant part:

(a) A person may not recklessly:

(1) engage in conduct that creates a substantial risk of death or serious physical injury[4] to another[.]

The State's burden in proving a charge of reckless endangerment is to show beyond a reasonable doubt that, "1) that the defendant engaged in conduct that created a substantial risk of death or serious physical injury to another; 2) that a reasonable person would not have engaged in that conduct; and 3) that the defendant acted recklessly." *Perry v. State,* 229 Md. App. 687, 697 (2016) (citation omitted). The aim of the criminal prohibition is "to deal with the situation in which a victim is put at substantial risk of

---

[4] CL § 3-201(d) defines serious physical injury as:

(d) "Serious physical injury" means physical injury that:

(1) creates a substantial risk of death; or

(2) causes permanent or protracted serious:

(i) disfigurement;
(ii) loss of the function of any bodily member or organ; or
(iii) impairment of the function of any bodily member or organ.

13

death or serious bodily harm but may, through a stroke of good fortune, be spared the consummated harm itself." *Moulden v. State,* 212 Md. App. 331, 355 (2013) (citation omitted).

Here, unlike above, David admits the required *mens rea*, recklessness*,* but avers that the State failed to prove the *actus reus* of the crime – conduct that creates a substantial risk to another. In order to evaluate this claim, we look to what constitutes a "substantial risk."

For a risk to be "substantial" it need not be "almost certain to occur." *Williams v. State,* 100 Md. App. 468, 505 (1994). Rather, "[i]t is enough . . . that one has created an unnecessary risk that his conduct *might* cause the harmful result." *Id.* (emphasis in original). "It is well established in Maryland that the *actus reus* of creating a substantial risk is to be measured objectively, not subjectively . . . on the basis of the physical evidence in the case." *Perry,* 229 Md. App. at 700 (citations and internal quotations omitted).

Much of the related case law in Maryland addresses situations where a party has recklessly brandished a firearm. Although not directly on point, the discussion and standards set by these cases do inform what types of conduct create a substantial risk.

To sustain a conviction for reckless endangerment in the case of a firearm, it is necessary to establish that the firearm was operable. *Moulden*, 212 Md. App. at 358 ("cases hold that the risk of death or injury created in recklessly handling a *loaded, operable* firearm is that the weapon may discharge") (emphasis added). However, a loaded, and operable gun on its own also does not immediately create a substantial risk,

14

and "even if a gun is fired, that standing alone, is not enough to constitute the commission of a crime." *Perry,* 229 Md. App. at 701 (citation omitted). Rather, there is sufficient evidence of a substantial risk when a person puts a loaded and operable firearm in a position to discharge lethal force at an individual. *E.g., State v. Albrecht,* 336 Md. 475, 505 (1994).

To analogize the risk of harm from a match to a gun, David asks that we view the risk from the two lit matches as analogous to the situation in *Perry* where "shooting a pistol into the air or in the general direction of a roadway but considerably short" was found to be insufficient to be considered a substantial risk. 229 Md. App. at 701 (citation omitted). We agree. As David identifies, force was created, but not related in any meaningful way towards a person. Because the matches were so overwhelmingly likely to burn themselves out on the nonflammable surface, as they did, they created no appreciable risk of spreading harm to the house, much less the person inside.[5]

David also points us to a similar case from our sister state of New York, where the New York appellate court stated:

> Here, respondent lit a match, set the corner of a piece of paper on fire, and then dropped the piece of paper on the floor and stamped out the fire. The auditorium in which he was located had no carpeting, and no other students were in proximity to him. Although the seats in the auditorium were described as being made of wood, *there was no proof that the seats could be set on fire by a single piece of burning paper. Because no risk of injury to any other person was actually created by the conduct of respondent, his conduct does not constitute reckless endangerment* in the second degree. Consequently, the order must be reversed and the petition dismissed.

---

[5] For a conviction of reckless endangerment, the risk must be to "another" and risk to property will not suffice. CL § 3-204(a).

15

*In re Kysean D.S.*, 728 N.Y.S.2d 323, 324-25 (N.Y. App. Div. 2001) (emphasis added).

The State again points to Nada's presence watching over the matches as a relevant fact of why the fire did not spread and asserts that the fire could have spread and caused Nada injury, but for her presence to prevent such harm. However, this argument once again ignores that Nada was immediately on the porch to watch or put out the matches, because she was on notice of David's misbehavior because of his own, immediately prior actions and mischief on her porch just moments prior.

We agree with David that the likelihood that the matches would ignite the home and cause injury to Nada cannot be described as a "substantial risk." The juvenile court noted that the lit matches "potentially could have resulted in the house catching on fire and harm to both the house, and potentially, to Ms. Nada in this case." While the juvenile court is correct that these outcomes *potentially could have* occurred, that outcome is again reliant on an uncontrollable, external factor of the wind carrying the matches in such a way so as to keep them lit while blowing them to a combustible material, and ignores the aspects of his conduct that mitigated whatever very remote chance did exist. We cannot agree that the possibility of such an occurrence was likely enough for any rational trier of fact to conclude that it constituted a "substantial risk."

The record does not disclose what motivated David to harass his neighbor. Certainly, a reasonable person in Nada's position could have perceived the implicit threat in David's behavior, namely that lit matches could just as easily be placed on flammable material. David's conduct might have been the basis for a finding of involvement with

16

the criminal harassment, CL § 3-803,[6] but that is not the way that he was charged.  For this reason, we reverse the juvenile court's finding of David's involvement with reckless endangerment.

Because we reverse both findings of David's involvement, we need not address the merits of the third question regarding the suppression of the show-up identification.

**JUDGMENTS OF THE CIRCUIRT COURT FOR WICOMICO COUNTY, SITTING AS A JUVENILE COURT REVERSED.  COSTS TO BE PAID BY WICOMICO COUNTY.**

---

[6] CL § 3-803. Harassment.

(a) *Prohibited.* – A person may not follow another in or about a public place or maliciously engage in a course of conduct that alarms or seriously annoys the other:

>    (1) with the intent to harass, alarm, or annoy the other;

>    (2) after receiving a reasonable warning or request to stop by or on behalf of the other; and

>    (3) without a legal purpose.

(b) *Exception.* – This section does not apply to a peaceable activity intended to express a political view or provide information to others.

(c) *Penalty.* – A person who violates this section is guilty of a misdemeanor and on conviction is subject to:

>    (1) for a first offense, imprisonment not exceeding 90 days or a fine not exceeding $500 or both; and

>    (2) for a second or subsequent offense, imprisonment not exceeding 180 days or a fine not exceeding $1,000 or both.