IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 82178-4-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| CHARLES R. PEAVEY, | ) | |
| | ) | |
| Appellant. | ) | |
| | ) | |

ANDRUS, A.C.J. — A jury convicted Charles Peavey of attempted first degree arson after he poured gasoline onto the floors of several rooms in a home he shared with other residents. He appeals this conviction, arguing there is insufficient evidence to demonstrate he intended to commit arson. We affirm.

<u>FACTS</u>

In May 2020, Peavey rented a room in a Bellevue home, along with six or seven other people. Most of the residents lived on the second floor, except the property manager, Limin Yao, who lived on the first floor, and Peavey, who lived in a room in the basement.

The residents interacted little, in part because of a language barrier, as most of the house residents spoke Chinese, except for Peavey. Yao and Peavey typically communicated with hand gestures and the use of a cellular phone translator. When the COVID-19 pandemic began, Peavey spent a significant

Citations and pin cites are based on the Westlaw online version of the cited material.

amount of time in his room, playing music frequently and loudly. Tenants testified Peavey usually turned the music off by 9:00 p.m.

Just before midnight on May 18, 2020, one of the residents complained to Yao about loud music coming from Peavey's room. Yao knocked on Peavey's door, and when Peavey answered, used a hand gesture to ask him to turn down the volume. Peavey smirked at Yao, shook his head, and shut the door.

Yao returned to his room to think about how to address the situation. While Yao was still in his room, the music stopped, and he heard a noise in the kitchen. Yao went to investigate and immediately smelled gasoline. Yao saw Peavey walking toward him from the kitchen carrying two "red gasoline buckets," which he recognized as having been stored in the garage. Yao knew the cans contained gasoline but was unsure how full they were.

Yao then saw Peavey pour gasoline onto the floor as Peavey walked down the hallway toward him. Yao described Peavey having a "kind of smile that's scary" and "really chilly." Worried that the house would catch fire, Yao grabbed Peavey and pushed him out the front door as he yelled for the other tenants to evacuate. Peavey did not resist as Yao removed him from the home. Although Peavey spoke to Yao as they left the house, Yao was unable to understand him.

Another resident, Tyrone Li, called the police in response to Yao's screams. Li could smell the gasoline from his second floor room and, when he went downstairs, saw that the "whole floor was covered with gasoline." Li saw Peavey on the front porch and testified that Peavey looked angry and was cursing loudly,

saying things like "Shut the h— up" and "F— Bellevue." Li quickly left the house, afraid that a fire would start.

Another resident, Hailing He, smelled gasoline from the second floor and, when he came downstairs to investigate, saw that gasoline had been poured on the kitchen floor. He joined the others outside to wait for the police because "it felt safer." He, too, noted that Peavey looked angry. Because of the language barrier, He could not understand what Peavey was saying but was able to gather that Peavey was cursing.

Bellevue Police Department Officers Brad Carmen and Aaron Scott responded to the 911 call. When the officers arrived, they saw the residents standing outside and learned what had happened. Officer Carmen detained Peavey and placed him in the patrol car, noting that Peavey had "an extremely strong odor of gasoline coming from him." The police found no matches or lighter in Peavey's possession.

Officer Carmen then entered the house and found residents attempting to clean the gasoline up. The kitchen linoleum "was slick with gasoline," and puddled under the kitchen table. There was also gasoline on the living room floor and on "50 to 75 percent of the floor" in the hallway.

The State charged Peavey with attempted arson in the first degree. Because the crime involved the home Peavey shared with his roommates, the State further alleged that it was a crime of domestic violence. Peavey waived his right to counsel and represented himself at trial. Following the State's case in chief, Peavey moved to dismiss the charge, arguing there was insufficient

evidence demonstrating any intent to commit arson. The trial court denied the motion.

The jury found Peavey guilty as charged and the trial court sentenced him to 18 months of confinement, followed by 18 months of community custody.

ANALYSIS

Peavey contends there is insufficient evidence to prove that he intended to commit arson. We reject this argument because there was sufficient circumstantial evidence of Peavey's intent to support his conviction.

Due process requires that the State prove each element of a charged offense beyond a reasonable doubt. State v. Chacon, 192 Wn.2d 545, 549, 431 P.3d 477 (2018). Evidence is sufficient to support a conviction if, viewed in the light most favorable to the State, any rational trier of fact could have found the elements of the crime beyond a reasonable doubt. State v. Elmi, 166 Wn.2d 209, 214, 207 P.3d 439 (2009). A defendant's claim of insufficiency "admits the truth of the State's evidence and all inferences that reasonably can be drawn" from it. State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). Circumstantial evidence receives the same weight as direct evidence. State v. Thomas, 150 Wn.2d 821, 874, 83 P.3d 970 (2004). We review de novo the sufficiency of the evidence. State v. Rich, 184 Wn.2d 897, 903, 365 P.3d 746 (2016).

Under RCW 9A.48.020(1)(b), a person is guilty of first degree arson if he "knowingly and maliciously ... [c]auses a fire or explosion which damages a dwelling." "A person is guilty of an attempt to commit a crime if, with intent to commit a specific crime, [they do] any act which is a substantial step toward the

commission of that crime." RCW 9A.28.020(1). A "substantial step" is "conduct that strongly indicates a criminal purpose and that is more than mere preparation." Therefore, the State was required to prove that Peavey intended to cause a fire or explosion to damage a dwelling and that he took a substantial step toward committing that crime.

Peavey argues the State failed to prove that he poured the gasoline with the specific intent to maliciously cause a fire. He contends the evidence only demonstrates an intent to cause physical damage to the house. We disagree.

A person acts with intent "when acting with the objective or purpose to accomplish a result that constitutes a crime." The intent required is the intent to accomplish the criminal result of the base crime. State v. Johnson, 173 Wn.2d 895, 899, 270 P.3d 591 (2012). There is circumstantial evidence that shortly after a disagreement with Yao over the volume of his music, Peavey went to the garage to collect two canisters containing gasoline. Witnesses observed him pouring the gasoline throughout the kitchen, hallway and living room. As the trial court noted when denying Peavey's motion to dismiss, "[g]asoline, I think everyone knows, is a highly flammable liquid." Yao and Li both testified that they believed the presence of gasoline presented a serious risk of fire or explosion. Yao was so concerned about the circumstances that he instructed residents to turn off all of the lights in the home to avoid an inadvertent ignition of a fire. The police who responded to the scene were also concerned about the risk of an explosion because of the highly flammable nature of gasoline and the presence of fumes and, as a result, they asked everyone to evacuate the home.

Peavey argues, as he did to the jury, that this evidence is not sufficient because no lighter or matches were found in his possession and because he never made any attempt to get back into the house to light a fire. Peavey relies on two cases from other jurisdictions, neither of which support his argument. In State v. Ailshire, 664 S.W.2d 630 (Mo. Ct. App. 1984), a Missouri appellate court affirmed a conviction for attempted arson based on evidence that the defendant was seen fleeing the scene of a house fire where gasoline had been splashed on the house walls. Id. at 631-32. In In re David P., 234 Md. App. 127, 170 A.3d 818 (2017), a Maryland court of appeals reversed a conviction for attempted arson for insufficient evidence because the defendant, who left two burning matches on a doorstep, had repeatedly caused a disturbance at the victim's front door before fleeing. Id. at 132, 138. No accelerant was used, the defendant put the matches on a nonflammable surface, and the defendant had alerted the homeowner to the mischief. Id. at 139. His failure to start a more damaging fire demonstrated a lack of intent to do so. Id at 139-140.

Neither case is factually analogous to this one. Unlike Ailshire, Peavey was interrupted when Yao forced him out of the home before he could ignite a fire. His departure from the house does not indicate that Peavey had no intent to start a fire, but merely that Yao's actions denied him the opportunity to do so. Similarly, unlike in David P., Peavey did not put Yao on notice that he was pouring gasoline; Yao discovered him in the act. And, again, Peavey did not voluntarily leave the house before lighting a fire—Yao pushed him out. As the David P. court acknowledged, the "use of an accelerant allows a reasonable inference of intent,

because it forces one to the conclusion that the actor was intending to set fire to a building, as there is no other rational purpose for conduct such as splashing gasoline on building walls." David P., 234 Md. App. at 139. We agree with this reasoning.

There was sufficient evidence from which the jury could reasonably infer that Peavey poured the gasoline with the intent to maliciously cause a fire. Thus, there was sufficient evidence supporting his conviction.

We affirm.

Andrus, A.C.J.

WE CONCUR: